■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. PETER MEROLA and CHARLES MCCOLE, Respondents, et al., Defendant.— Appeal from an order of the Supreme Court, Kings County, dated June 21, 1965, which granted respondents' motion to suppress certain evidence against them on the ground, as stated in the court's opinion, that the People "failed to sustain their burden of proof in sustaining the legality of a search" and failed to prove "that a felony was * * * committed and that * * * [respondents] were the perpetrators thereof." Order reversed, on the law and the facts, and motion denied. The testimony by the police officers at the hearing established that at 4:10 A.M. a "burglary in progress" call was received via police radio; the officers proceeded to the scene; one observed a broken window in a business establishment, heard an alarm sounding from within and saw a man running toward an automobile which had its headlights on and whose "motor apparently was running"; and the suspect vehicle proceeded to leave the scene but was subsequently halted by one of the police patrol cars. The officers approached the vehicle and observed a "large number" of coats in the back seat. The occupants of the vehicle did not respond to any questions. Respondents were placed under arrest and an immediate search of the automobile revealed additional coats. It is incontestable that no search of the automobile occurred when the officers observed the coats in open view unless they had no right to be in a position of attentiveness. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence" (*Harris* v. *United States,* 390 U. S. 234, 236; *Davis* v. *United States,* 327 F. 2d 301, 305). We are of the opinion that the initial detention of the automobile was lawful under either of the following theories: (1) It has been held that the police may stop an automobile to ascertain if the occupant has a driver's license and motor vehicle registration (*People* v. *Hoffman,* 24 A D 2d 497; Vehicle and Traffic Law, § 401, subd. 4). (2) A police officer is authorized to stop a suspect "abroad in a public place whom he reasonably suspects * * * has committed * * * a felony" (Code Crim. Pro., § 180-a, subd. 1; *People* v. *Rivera,* 14 N Y 2d 441, cert. den. 379 U. S. 978). "The reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security" is the test to be applied when inquiring about Fourth Amendment violations (*Terry* v. *Ohio,* 392 U. S. 1, 19; *Brinegar* v. *United States,* 338 U. S. 160, 176; *People* v. *Morales,* 22 N Y 2d 55, 62–63; *People* v. *Taggart,* 20 N Y 2d 335, remittitur amd. 21 N Y 2d 729); and due weight must be accorded "to the specific reasonable inferences which he [the police officer] is entitled to draw from the facts in light of his experience" (*Terry* v. *Ohio, supra,* p. 27; see *People* v. *Valentine,* 17 N Y 2d 128, 132; *People* v. *Rivera, supra*; *People* v. *Santiago,* 13 N Y 2d 326). We are of the view that, although there is a "troublesome line posed * * * between mere suspicion and probable cause" (*Brinegar* v. *United States, supra,* p. 176), the arresting officer in this particular situation and under these circumstances had (at the very least) a valid basis to "reasonably

suspect" that respondents had committed a felony. Consequently, he could lawfully detain them and demand an explanation of their actions (*People* v. *Watson,* 29 A D 2d 987; Code Crim. Pro., § 180-a, subd. 1; see *People* v. *Hester,* 28 A D 2d 909). (3) An application of the same test sustains the People's contention that probable cause to arrest existed at the time of the initial detention (Code Crim. Pro. § 177, subd. 4; *People* v. *Loria,* 10 N Y 2d 368). Thereafter, the presence of a large number of coats in plain view raised the level of suspicion (assuming *arguendo* that the police operated under theory numbers 1 or 2) to "reasonable cause for believing that a felony has been committed" (Code Crim. Pro., § 177, subd. 4; cf. *Sibron* v. *New York,* 392 U. S. 40, 61[n. 20]). Since the arrest was lawful, the search incidental thereto was proper (*People* v. *Loria, supra*); and the mere fact that at the time of the search and seizure the police did not know about the specific burglary does not require a determination that the arrest and the search and seizure were unlawful (*People* v. *Messina,* 21 A D 2d 821; *People* v. *Cassone,* 20 A D 2d 118, affd. 14 N Y 2d 798; cert. den. 379 U. S. 892). The purpose of a suppression hearing is not to determine guilt or innocence but to ascertain whether the police had lawful cause to take the action which led to the arrest and seizure (*Brinegar* v. *United States,* 338 U. S. 160, *supra*; *People* v. *Zimbardo,* 21 N Y 2d 15, 16-17; *People* v. *Coffey,* 12 N Y 2d 443, 452). Furthermore, the court below erred in placing the onus of the legality of the search on the People. The People merely "are under the necessity of going forward in the first instance" (*People* v. *Malinsky,* 15 N Y 2d 86, 91 [n. 2]) and the ultimate burden of proof by a preponderance of the credible evidence rests with respondents (*People* v. *Newberns,* 25 A D 2d 528; *People* v. *Entrialgo,* 19 A D 2d 509, affd. 14 N Y 2d 733). Beldock, P. J., Christ, Brennan, Rabin and Munder, JJ., concur.