J. Irwin Shapiro, J.
Defendants, indicted for the crimes of attempting to commit the crime of'murder, conspiring to commit the crime of murder and possession of a pistol as a felony, make this motion for a dismissal of the indictment upon three grounds: (1) that eavesdropping warrants granted on May 12 and May 31, 1969, respectively, were “ invalid and illegal as related * " * to the crimes charged in [the] indictment (2) that the evidence presented to the Grand Jury was illegal in that it consisted of intercepted telephonic communications obtained under an invalid eavesdropping warrant; and (3) that an order of September 18, 1969, which amended the eavesdropping warrants to include conversations overheard on June 4, 1969 constituting evidence of the crimes of conspiracy to murder and possession of firearms, was improperly and *655 unconstitutionally made. Defendants also seek an inspection of the Grand Jury minutes and an order directing the District Attorney to produce for their inspection the original eavesdropping orders and the papers upon which they were granted so that defendants may compare them with the copies thereof heretofore furnished to them by order of this court.
On May 12, 1969 an eavesdropping warrant issued pursuant to the statute then in force (L. 1968, ch. 546) permitting the interception of telephonic communications, relating to crimes dealing with narcotics, over a telephone listed in the name of the father of defendant Napolitano. On May 31, 1969 that eavesdropping warrant was extended to June 19, 1969. On June 4, 1969 conversations, in which defendants participated, relating to a potential murder by shooting were intercepted. As a result, the defendants were apprehended by the police on the same day in the vicinity where the murder was to be committed. When apprehended, one of the defendants had a loaded pistol in his hand. Although the wiretap order was not due to expire until June 19th, the wiretap itself was discontinued by the police as soon as they overheard the ‘ ‘ murder5 ’ conversation.
On June 16, 1969, the indictment in this case was filed. In September, 1969 defendants made a motion for various forms of relief, including a request that they be furnished with copies of any eavesdropping warrants and the papers on which they were granted. On September 18, 1969, one day after the submission of that motion before me, the District Attorney obtained an order amending the eavesdropping warrants so as to include crimes based on the ‘1 murder ’ ’ conversation overheard on June 4. That order was signed by the Justice who granted the original eavesdropping warrant. Defendants’ motion before me was granted to the extent of directing the District Attorney to furnish the defendants with a copy of any and all eavesdropping warrants and the papers on which they were based. In all other respects it was denied, without prejudice to a direct attack upon the warrants and a request for a suppression hearing after the service of the papers. Thereafter, in compliance with that order, the District Attorney served such copies upon defendants’ counsel.
I.
The main question here presented for resolution — and apparently never heretofore decided in this State — is whether a telephonic communication intercepted under a lawful eaves *656 dropping warrant as to a crime different from that for which the warrant was issued is constitutionally defective and may not be used if an order amending the eavesdropping warrant so as to include the additional crime is not promptly obtained.
Apart from attacks relating to the form of the amending order and its supporting papers ■ — none of which is of sufficient import to affect the validity of the order — defendants’ main attack upon the validity of this order is the claim that it was not obtained “as soon as practicable,” as required by" the statute in effect when the order was made. (Code Crim. Pro., § 825, subd. 4; L. 1969, ch. 1147, eff. June 25, 1969.) The District Attorney asserts, however, without making it a decisive point on the issue, that the controlling statute in this regard is not the 1969 statute cited by defendants but is rather subdivision 1 of former section 822 of the Code as enacted in 1968 (L. 1968, ch. 546), in force at the time the original eavesdropping warrants issued, and which provided that an order to amend an eavesdropping warrant to include an overheard conversation relating to a crime not specified in the warrant must be obtained ‘ ‘ as promptly as practicable. ’ ’ So far as the question presented here is concerned, it matters not which statute governs the amending order attacked by defendants. The difference between “as soon as practicable” and “as promptly as practicable ” is a semantic difference with no substantive distinction.
Prior to Berger v. New York (388 U. S. 41) decided in 1967, interception of telephone conversations was governed by section 813-a of the Code of Criminal Procedure. Berger held that statute to be unconstitutional because, under it, a wiretap or eavesdropping order could be granted upon affirmation that “ there is reasonable ground to believe that evidence of crime may thus be obtained.” This, the Supreme Court held, collided with the Fourth Amendment requirement of probable cause to justify the issuance of a privacy-invading warrant, since it did not contain a provision mandating a showing of the particular offense that had been or was being committed and because the statute, in its “broad sweep,” was constitutionally defective in failing to require, among other things, a particular description of the conversations sought. (Berger v. New York, supra, pp. 54-56.) Shortly thereafter, in Matter of Intercepting Tel. Communications (55 Misc 2d 163) I pointed out that Berger did not purport to bar all wiretap and eavesdropping orders as unconstitutional for, despite the holding that section 813-a was unconstitutional, the Supreme Court nevertheless reaffirmed its holding in Osborn v. United States *657 (385 U. S. 323) that an order permitting eavesdropping granted on an affidavit setting out in detail the conversations sought to be intercepted and containing other “ discriminate circum-. stances ” which fully met the “ requirement of particularity ” of the Fourth Amendment could constitutionally issue (pp. 56-57, 63); and I held that, upon the showing made in that application, a wiretap order could and should constitutionally issue despite the absence of a controlling statute. Nevertheless, and in order to provide codified guidelines in the grantiitg of eavesdropping orders, the Legislature, in 1968, enacted chapter 546 of the Laws of 1968. Thus, in a memorandum of the Commission on the Revision of the Penal Law and Criminal Code as to the purpose of the statute (McKinney’s 1968 Session Laws of New York, p. 2293), it was said: “ The purpose of this bill is to provide a comprehensive scheme for the restricted issuance of eavesdropping warrants, based upon strict standards of probable cause and necessity, and demanding scrupulous particularity in the description both of the person and place upon which the eavesdropping is to be conducted and the nature of the evidence sought thereby. The new statutory scheme is designed to comply with the constitutional standards enunciated last year by the United States Supreme Court in Berger v. New York (87 S. Ct. 1873, 388 U. S. 41) and Katz v. United States (88 S. Ct. 507, 389 U. S. 347), and by the New York Court of Appeals in People v. Kaiser (21 N. Y. 2d 86, 286 N. Y. S. 2d 801, 233 N. E. 2d 818).”
In 1969, the following year, that statute was repealed and replaced with a n'ew eavesdropping statute (L. 1969, ch. 1147). This was prompted by the following statement in the Governor’s annual message to the Legislature (McKinney’s 1969 Session Laws of New York, p. 2530):
“ During the last Session of the Legislature, your Honorable Bodies adopted, upon my recommendation, a bill providing for the controlled use of electronic eavesdropping in accordance with recent United States Supreme Court decisions. Within a few days, the Federal government adopted an eavesdropping law that conflicts in several respects with State law.
“ Accordingly, I shall recommend to your Honorable Bodies legislation to conform the State law with the Federal law. This should enlarge our capacity to attack organized crime through court-authorized eavesdropping under proper safeguards.”
In approving the latter legislation, the Governor stated (ibid., p. 2586):
*658 ‘ ‘ The bill, enacted upon my recommendation, conforms State standards for court authorized eavesdropping warrants with federal standards and increases the flexibility of this law enforcement tool in the battle against organized crime.
‘ ‘ Shortly after the enactment of Chapter 546 of the Laws of 1968, prescribing a comprehensive scheme for the restricted issuance of eavesdroping warrants, the President signed the Omnibus Crime Control, and Safe Streets Act of 1968. Title III of the federal act defines in detail the circumstances under which eavesdropping may be authorized by the individual states, and differs in several respects from existing State law.”
So far as the statutes dealt with the timeliness of, and the requirements for, an order amending an eavesdropping warrant to cover a crime not included in the warrant, there was no substantive change.
Neither in the Governor’s annual message to the Legislature in 1969 nor in his memorandum approving the eavesdropping legislation enacted that year was there any discussion of the provision regarding an order amending an eavesdropping warrant to include a crime not covered by it which could act as a guide in the determination to be made here. However, in the memorandum of the Commission on Revision of the Penal Law and Criminal Code, regarding the 1968 eavesdropping legislation, it was said (McKinney’s 1968 Session Laws of New York, supra, p. 2296): ‘‘ Section 822 relates to a situation where, in the course of executing a valid eavesdropping warrant (which authorizes, of course, the overhearing of a particularly described conversation), the applicant or his designated agent unexpectedly overhears an incriminating conversation that is totally unrelated to the crime for which the warrant was issued. A line of authority upholds the seizure and use of evidence not specified in a search warrant but discovered in the course of executing such warrant. Similarly, a valid eavesdropping warrant should allow the use of unexpected conversations relating to a crime other than the one under investigation. Since the question is not altogether free from doubt, cogent reasons exist for dealing with it statutorily, as does § 822. Subdivision 1 of this section provides that when such unexpected conversation is overheard, the applicant must, as promptly as practicable, apply to the justice who issued the warrant for an order amending such warrant to include such conversation.”
There is, as is stated in the foregoing memorandum, a line of authority upholding the seizure and use of evidence not specified in a search warrant but discovered in the course of executing the warrant. (See discussion at 79 C. J. S., Searches and Seizures, *659 pp. 903-904, § 83, subd. e.) As a general principle, it is well settled “ that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence ” (Harris v. United States, 390 U. S. 234, as quoted in Schutz v. United States, 395 F. 2d 225, p. 228, cert. den. 394 U. S. 946 ; also, see, e.g., Ker v. California, 374 U. S. 23, 43; Gilbert v. United States, 366 F. 2d 923, 932, cert. den. 388 U. S. 922; Davis v. United States, 327 F. 2d 301, 305-306). As it was put in People v. Roach (44 Misc 2d 40, 41, affd. 26 A D 2d 561): “ The general principle is that if the ‘ original ’ search is reasonable, any fruits, instrumentalities or contraband of an ‘ unrelated5 crime observed or uncovered in the course of that reasonable search may reasonably be seized ”.
Assuming, therefore, that the amending order was not obtained “as promptly as practicable ” or “as soon as practicable, ’ ’ as required by the applicable statutes, does that mandate a holding that the ‘ ‘ murder ’ ’ conversation overheard on June 4 was illegally obtained and is therefore inadmissible as evidence? Put in another way, is a legally intercepted telephone communication rendered constitutionally defective because of the failure thereafter to perform a statutory condition subsequent? In the context of this case, I answer both questions in the negative.
There are many situations where the failure to perform a required subsequent act does not void a prior lawful act. Thus, it has been held that a return and inventory of articles seized pursuant to a search warrant, as required by State and Federal statutes, are ministerial acts, and any failure therein does not void the search warrant or the search and seizure made pursuant thereto. (United States v. Haskins, 345 F. 2d 111, 117; United States v. Baldwin, 46 F. R. D. 63, 64, see footnote; also, see, Rose v. United States, 274 F. 245, 250-251; Evans v. United States, 242 F. 2d 534, 536; People v. Massey, 38 Misc 2d 403, 407.) In United States v. Averell (296 F. Supp. 1004, 1014, 1015), it was held that the failure to file a search warrant promptly with the Clerk of the court as required by subdivision (f) of section 41 of the Federal Rules of Criminal Procedure — the warrant having been filed four months later ■ — -was the breach of a mere ministerial act and did not invalidate an otherwise lawful search and seizure under the search warrant in the absence of a showing that defendants suffered prejudice by this lapse. As was pointed out in the Baldwin case, the rationale for this principle was codified, so far as Federal cases are concerned, by section 52-a of the Federal Rules of Criminal Procedure, *660 which directs that “ any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.” By the same token, it has been held that a daytime search under a search warrant which improperly authorized a nighttime search is not illegal. (People v. Varney, 32 A D 2d 181, 182.) In the same vein, the failure of a District Attorney to file a lesser plea statement pursuant to former section 342-a of the Code of Criminal Procedure was held to constitute a mere irregularity which did not affect the validity of the judgment of conviction entered thereon. (People v. Brossoit, 26 A D 2d 843.)
It seems apparent that the purpose the lawmakers had in mind, in requiring an amendment of an outstanding interception order where new criminal matters not specified in the warrant came to light over the wiretap, was to legalize the continuance on the wiretap to discover further evidence of the newly disclosed crimes. Here we are dealing with a situation where the amending order — which the District Attorney failed to promptly obtain — dealt solely with past conversations, since the wiretap itself was discontinued immediately upon the overhearing of the “ murder ” conversation. Under such circumstances, and by a parity of reasoning with the cases above cited, I hold that the failure to obtain an amending order as promptly as possible was a mere irregularity which did not affect the legality of the interception or the prosecutor’s right to offer the conversation in evidence. To hold otherwise would exalt form above substance and negate the only purpose which the Legislature could have had in mind in requiring an amending order, to wit, the legality of continuing on the wiretap for the disclosure and discovery of crimes not theretofore specified in the original interception warrant.
It follows from what has been said that, although the order of September 18, amending the eavesdropping warrants of May 12 and May 31 to include the conversation of June 4 pertaining to the planned murder, was not obtained “ as soon as practicable ” or “as promptly as practicable,” that was a mere irregularity which did not affect any substantive rights of the defendants. (Cf. 79 C. J. S., Searches and Seizures, p. 896.) In the fact pattern here, prompt judicial supervision could in no way have benefited defendants, since the wiretap was discontinued immediately upon the interception of the communication in question. The failure to obey the statutory requirement that an amended order be obtained should bring into play an exclusionary rule only where the interception continues after an unprovided-for conversation is overheard, for it is only the continuation of the wiretap which makes judicial supervision *661 necessary for the protection of Fourth Amendment rights of privacy.
II.
No direct attack is made in the instant motion upon the original warrant of May 12 or its extension by order of May 31. Defendants make no contention that the papers upon which the warrants issued were legally insufficient for that purpose. I have examined those papers and I find that there was a sufficient showing of probable cause before the court to justify the issuance of the warrants and that they were lawfully and properly issued. Nor do defendants make any showing of fact to bring into question the legality or propriety of the warrants. It follows, therefore, that there is no merit to that portion of their motion which seeks a dismissal of the indictment upon the ground that the evidence presented to the G-rand Jury was illegal in that it consisted of intercepted telephonic communications obtained under an alleged invalid eavesdropping warrant.
III.
That branch of the motion which seeks a dismissal of the indictment upon the ground that the eavesdropping warrants of May 12 and May 31 were ‘ ‘ invalid and illegal as related # * * to the crimes charged in [the] indictment ” is also devoid of merit. When these warrants were granted, section 816 of the Code of Criminal Procedure provided that an eavesdropping warrant may issue ‘ ‘ upon reasonable cause to believe that evidence of the commission of a particular crime * * * may be obtained ”. (L. 1968, ch. 546.)
IV.
As above stated, in September, 1969 defendants made a motion to inspect the G-rand Jury minutes, to suppress evidence, to be furnished with copies of the orders permitting eavesdropping and the papers on which they were granted, and to vacate such eavesdropping orders. On October 24, 1969, I made an order granting that motion ‘1 to the extent of directing the district attorney to serve upon the defendants a copy of the warrant and all the papers on which it was based ’ ’ and denying it 1 ‘ in all other respects * * * without prejudice to a direct attack upon said warrant and a request for a suppression hearing after the service of the papers hereinabove provided for.” As noted, defendants have not made a direct attack upon the eavesdropping warrants. Their attack, rather, is directed to the evidence *662 obtained based upon the contention that the amending order was invalid. However, despite the clear denial of the portion of their prior motion by which they sought an inspection of the Grand Jury minutes, defendants in the instant motion again seek such relief. The fact that the District Attorney may have consented upon the first motion to an inspection of the Grand Jury minutes (which defendants urge as a basis for such relief upon this motion) neither puts into question the propriety of the original denial nor gives the right to seek such relief again. The court is not required to agree with a consent of a prosecutor that a defendant be granted certain relief, or his confession of error. A consent or confession of error does not relieve a court of the performance of its judicial function. (People v. Lewis, 33 A D 2d 193, 194; also, see, e.g., Sibron v. New York, 392 U. S. 40, 58 ; Young v. United States, 315 U. S. 257, 258.)
Y.
The District Attorney has offered no opposition to the branch of defendants ’ motion which seeks an order requiring the District Attorney to produce the originals of the eavesdropping warrants and the papers on which they were granted for comparison with the copies thereof heretofore served upon defendants. Consequently, that portion of defendants’ motion is granted.
Defendants’ motion is denied except as above set forth.