Henry F. Werker, J.
The above-named defendants were indicted by the September, 1971 Term of the Grand Jury for the County of Greene and charged with the crimes of conspiracy in the second degree in violation of section 105.10, and conspiracy in the third degree in violation of section 105.05 of the Penal Law, criminal usury in violation of section 190.40 of the Penal Law, and assault in the second degree in violation of section 120.05 of the Penal Law.
All of the defendants moved for an order permitting inspection of the Grand Jury minutes or in the alternative dismissing the indictments, on the grounds inter alia that the court had no jurisdiction under CPL 20.40 (subd. 1) and that the indictment was found upon legally insufficient evidence. These motions were made on November 8 and argued on November 11, 1971. Subsequently, the defendants moved on November 23, 1971, for *919 an order under the CPL 710.20 suppressing alleged recordings of telephonic communications. This motion was argued on that day. A preliminary decision was made by this court on December 14,1971, setting a date for a suppression hearing on January 4, 1972, which was subsequently adjourned at the request of counsel until January 13, 1972, when the hearing was held.
The court in rendering this decision intends to dispose of both sets of motions referred to above and the findings of fact and conclusions of law are made applicable to both sets of motions.
Arnold W. Proskin, District Attorney of Albany County, made an application to Hon. T. Paul Kane, Justice of the Supreme Court, on May 4, 1971, for an eavesdropping warrant. This application was based upon a supporting affidavit made by one Thomas J. O’Donnell, a member of the Bureau of Criminal Investigation of the New York State Police, who was investigating illegal gambling activities in the Cities of Albany and Troy, New York.
The telephone numbers for which the warrant was requested were 459-4682 and 459-7007. These numbers were listed in the records of the New York Telephone Company to one Alan Goldberg at 12 California Avenue, Apartment B303, Albany, New York. Alan Goldberg was known to the investigating officer by reason of a previous arrest for permitting others to use his telephone for illegal gambling activities.
The crimes which are recited in the warrant are: Promoting gambling in the first degree (Penal Law, § 225.10), possession of gambling records in the first degree (Penal Law, § 225.20) and conspiracy in the third degree (Penal Law, § 105.05).
In addition to Alan Goldberg, the persons listed as having conversed over these wires are George Tutunjian and one A1 “Doe,” the name “Doe” being fictitious since the officer did not then know the true last name.
The warrant was issued on May 4, 1971, and was to expire on June 3, 1971.
On May 11,12 and 13,1971, conversations over the listed telephone numbers were seized which, in the opinion of the officers, involved the crimes of grand larceny in the first degree by extortion and criminal usury. According to the testimony of Officer O’Donnell, these would have been monitored by him no later than May 15, 1971. He was at that time not only monitoring the recordings but was also involved in personal surveillance as well as preparing the affidavits and applications upon which new warrants were to be issued and the warrants themselves. The monitoring involved listening to the tapes or wires and *920 making the initial decision to present these excerpts to his superiors for instructions as to how to proceed. Personal surveillance was necessary to assist in identifying the persons using the telephones. The officer testified that his stenographic assistance consisted of using typists when they had time or after hours. He also testified that during the period involved he was working 20 hours a day. He also made the arrangements with the telephone company for location of the lines to be tapped and location of the interception devices.
Sometime between May 15 and May 26,1971, Officer 0 ’Donnell prepared an affidavit to amend the warrant of May 4 so as to include the additional crimes which he believed the telephonic conversations of May 11, 12, 13 had disclosed were about to be or were being committed. A draft of this warrant was admitted as People’s Exhibit 2 on the ground that although it was self-serving its authenticity was corroborated by the application of May 26, 1971, and the supporting affidavit of that date. Senior Investigator Gerald Looney who also testified at the hearing testified that on or about May 20 intercepts indicated that further conversations with respect to the new crimes would be had over the home phone and that the sports bookmaking was to be moved to a new location. It subsequently was decided as a result of conferences between Looney, O’Donnell, their superiors and counsel for the Division of State Police, that an application not only for amendment but also for discontinuánce of surveillance of the numbers in the warrant of May 4, 1971, and the issuance of a new warrant for new numbers listed to Seymour Sher and Louise Lozoff should be made.
The application of the District Attorney for Albany County and the affidavit of Thomas J. 0 ’Donnell indicate that the intention at that time was to receive an amendment of the warrant of May 4, 1971, and discontinuance of that warrant and a new replacing warrant. The warrant issued on May 26, 1971, included the new crimes of grand larceny first degree by extortion, and criminal usury. It also included the numbers listed to defendant Sher and to one Louise Lozoff. It did not amend the warrant of May 4, 1971.
Neither this warrant nor one dated June 23, 1971, extending it, nor the original warrant, mentioned the name of defendants Andrew D ’Apice also known as Chubby D’Apice or Gene Amash.
On July 22,1971, the warrant of May 4,1971, and the warrant of May 26, 1971, were amended nunc pro tunc so as to include, among others, conversations of Seymour Sher and Andrew D’Apice with respect to the first warrant and conversations of all three defendants with respect tó the second warrant.
*921 None of the warrants, extensions or amendments mention the crime of assault in the second degree contrary to section 120.05 of the Penal Law of the State of New York.
The motions to suppress the evidence obtained by telephonic eavesdropping are based upon 1) defects in the form of the warrants inasmuch as the defendants were not originally named therein; 2) that the amendment was not obtained as soon as practicable and consequently is an unconstitutional application of subdivision 4 of section 825 (L. 1969, ch. 1147, § 1) of the Code of Criminal Procedure (now incorporated in CPL 700.65, subd. 4); 3) that subdivision 4 of section 825 of the Code of Criminal Procedure and subdivision 4 of section 700.65 are unconstitutional since the granting of an amendment even if as soon as practicable in effect converts the present statute into a shotgun statute such as was condemned in Berger v. New York (388 U. S. 41) which held section 813-a of the Code of Criminal Procedure unconstitutional; 4) no authority was at any time given to eavesdrop on conversations of Andrew D ’Apice and consequently the evidence obtained against him by eavesdropping on lines for which authority had been granted is illegal and should be suppressed; and 5) the statutes with reference to the custody of warrants, applications, and recordings, section 823 of the Code of Criminal Procedure and CPL 700.55, were not complied with. Taking the issues thus presented seriatim, the court has reached the following conclusions of law:
1. The law does not require that the persons whose conversations are to be recorded be named. It simply requires that they be named if they are known. The law does not require any particular form as to the warrant. The warrant must be read as a whole and if upon such a reading it contains all of the elements required by the statute, it is sufficient. The warrants issued in this case, People’s Exhibits 1, 3, 4 and 5 are found to be sufficient.
2. The statute (Code Crim. Pro., § '825, subd. 4 and CPL 700.65, subd. 4) provides in substance that any law enforcement officer who, while engaged in the authorized interception of communications, intercepts evidence of another crime not otherwise sought may use such evidence before a grand jury or in a criminal proceeding when a Justice amends the eavesdropping warrant to include such intercept. 11 The application for such amendment shall be made by the applicant as soon as practicable.” (Code Crim. Pro., § 825, subd. 4.) The amending order in this case was issued on July 22, 1971, while the conversations were overheard on May 11, 12, and 13, 1971. It is *922 the requirement of the statute that the application be made as soon as practicable. Nothing in the statute requires the issuance of an order within the prescribed period of time. The question as to whether the application to amend was made as soon as practicable must depend in each case upon the circumstances then existing. The application for amendment was made on May 26, 1971, or within 13 days of the last interception having reference to the crimes not otherwise sought. Surveillance apparently continued thereafter, since on May 20 interceptions indicated that further conversations with respect to those crimes would come over defendant Sher’s home telephone and that his gambling operation was to be moved to 9 new location. The warrant of May 26 did include the new crimes. The amendment was issued 72 days after the original conversation indicating that a crime not particularized in the original warrant was issued. It was issued before any arrests were made and before any testimony was given in either a criminal proceeding or before a grand jury.
The warrant of May 4, 1971 expired on June 3, 1971. The application of May 26, 1971, requested not only the amendment of the May 4 warrant but also its discontinuance. The testimony of the investigators indicated that in the period intervening they were engaged in many duties including the continued monitoring, the evaluation of the recordings, personal surveillance, attempts to secure evidence by other means, arranging for the location of the plant for overhearing and the location of the new lines, in addition to personally preparing drafts of the applications, supporting affidavits and the warrant and consultation with their superiors and counsel and the District Attorney. Investigator 0 ’Donnell indicated that during the period involved he was working 20 hours a day.
The American Bar Association’s proposed standards with reference to electronic surveillance contained a proposal with reference to “ Substantial Bights: Excusable Error ” (§2.3 [d]), which was not adopted because it was felt that each case should be considered on a case-by-case basis. In this court’s opinion it is a well-reasoned guideline for the treatment of situations such as that which has arisen here.
It provided: ‘1 An error not affecting substantial rights in an application, authorization or overhearing or recording of the otherwise authorized overhearing or recording of wire or oral communications should not be grounds for the suppression of such communications or evidence derived therefrom. Excusable error made in the process of securing authorization for the over *923 hearing and recording of such communications should be subject to cure by judicial ratification.”
The Federal Rules of Criminal Procedure provide similarly in subdivision (a) of rule 52 as follows: “Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.”
The court is aware of the distinction made by Shapiro, J. as to the continuation of overhearing as against cessation when a new crime is indicated by the overhearing (People v. Ruffino, 62 Misc 2d 653, 660) but finds no merit in that distinction as defendants have sought to apply it here. The rules as to search and seizure are clear that if the original search is legal that which is discovered in the course of that search, i.e., “ in plain view ’ ’ constituting another crime, is legal evidence. (Harris v. United States, 390 U. S. 234 [1968].) Defendants have not here attacked the warrant of May 4 or its supporting application and affidavits. They have sought rather to collaterally attack the evidence obtained under that warrant for crimes which were not “ otherwise sought.” The technical grounds advanced in that attack are neither in the best interest of public safety nor the preservation of the individual right to be secure in his home or his communication be they written or oral. However, it must be continually emphasized that the issuance of a warrant depends in the first instance upon probable cause that a crime or crimes is or are about to be committed. The neutral judicial officer issuing this warrant is presumed to have done so with judicial and impartial consideration of the facts disclosed to him. From the time that warrant is issued, it would be alien to human behavior and conduct to say that any conversation intercepted on the line or lines to be tapped might not involve crimes other than those which the warrant mentioned. The person calling the numbers involved, as well as the person using the wire to make calls, is in a different category from the ordinary citizen making a call on a telephone where the probable cause that a crime is being committed has not prima facie, albeit ex parte, been established. Once an interception is authorized, what is intercepted may become evidence against the person who calls, provided that the procedural safeguards required by section 825 (subds. 3, 4) are observed.
As was said in United States v. Cox (449 F. 2d 679, 687): “In summary then, we uphold the statute on the basis that it demands an original authorization in accordance with the mandate of Berger v. New York [388 U. S. 41], and we do so upon the basis that the nature and probable consequence of authorized wire *924 tapping is discovery of unanticipated and undescribed communications. The very nature of this form of invasion is conducive to producing unexpected information. If wiretapping is to be validated, and Berger, Osborn [385 U. S. 323] and Katz [389 U. S. 347] recognize its validity, then the interception and use of information which is so related to the original search is not to be excluded.”
No substantial right of these defendants was violated either by the issuance of the warrant of May 4, 1971, or the amending order of July 22, 1971. There was no unconstitutional application of the amendment procedures required by the statute. Consequently, the defendants have failed to sustain their burden of proof.
3. This statute (Code Crim. Pro., § 825, subd. 4 and CPL 700.65, subd. 4) is derived from and modeled after the Federal Eavesdropping Statute (U. S. Code, tit. 18, § 2518 et seq.). The constitutionality of that statute has been upheld at this writing by six United States District Courts and at least one Circuit Court. (United States v. Perillo, 333 F. Supp. 914 [D. Del., Sept. 2, 1971]; United States v. Cantor, 328 F. Supp. 561 [E.D. Pa., 1971]; United States v. Scott, 331 F. Supp. 233 [D.C., 1971] ; United States v. Sklaroff, 323 F. Supp. 296 [S.D. Fla., 1971]; United States v. Escandar, 319 F. Supp. 295 [S.D. Fla., 1970] ; United States v. Leta, 332 F. Supp. 1357 [M.D. Pa., Oct., 1971] ; United States v. Cox, 449 F. 2d 679.) There is little reason to doubt that the New York statute will meet the requirements of the United States Supreme Court’s eavesdropping trilogy. (Osborn v. United States, 385 U. S. 323 [1966]; Berger v. New York, 388 U. S. 41 [1967] and Katz v. United States, 389 U. S. 347 [1967].)
4. The fact that no authority was originally given in the warrant to intercept conversations of Andrew D’Apice or Gene Amash was cured by the amendment of July 22,1971. The testimony of Investigator 0 ’Donnell indicates that the identification of these persons had to be established and for that reason, they were not mentioned in the May 26 or June 23 warrant. Both were, however, included in the application and affidavit supporting the amending warrant of July 22 and the conversations of these persons under the May 4, May 26 and June 23 warrants were validated by the July 22 warrant. People v. Gnozzo (64 Misc 2d 599) has no application to the situation here because in that case the warrant was never amended. What has been said under point 2 of this decision is also applicable here. To require antecedent approval of the type of crime which one may hear *925 described over a particular telephone is an unrealistic approach to the problem. It should be sufficient that a showing is made in accordance with the statutory procedures after the overhearing giving rise to probable cause that another crime is about to or is being committed. Otherwise, it might well be argued that, if the amendment does not reach the original overhearing, all intercepts which follow are tainted by reason of the fact that the original intercept indicating a new crime was unauthorized. This certainly could not have been the intention of the Legislature nor can this court believe that the plain view doctrine is to be abandoned with respect to this type of search and seizure.
5. The defendants’ contention that since the applications, supporting affidavits, warrants and the transcripts were not filed in accordance with the statute (Code Crim. Pro., § 823 and CPL 700.55), the evidence should be suppressed, is without merit. The defendants have failed to show that noncompliance to file has resulted in some type of tampering with these records. This court holds that the requirements of the statute are purely ministerial in character and do not affect substantial rights (People v. Ruffiano, 62 Misc 2d 653, 659, 660, supra). The failure to perform a required subsequent act has not voided the prior lawful acts.
With respect to the jurisdiction of this court, CPL 20.40 (subd. 1) provides: “ § 20.40 Geographical jurisdiction of offenses; jurisdiction of counties. A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this state have jurisdiction pursuant to section 20.20, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:
“ 1. Conduct occurred within such county sufficient to establish : (a) An element of such offense; or (b) An attempt or a conspiracy to commit such offense ”. This section is, in effect, a clarification and codification of section 134 of the Code of Criminal Procedure and the cases decided under it. Therefore, the court is of the opinion that the interests of justice do not require a decision under section 134 of the Code of Criminal Procedure. (See CPL 1.10, subd. 2.)
In this ease the evidence is that defendant Sher in Albany County communicated with defendant D ’Apice in Kings County for the purpose of compelling one Rienzo to pay a gambling debt. After that conversation, defendant Sher met with Rienzo in Greene County for the purpose of making a modified arrangement as to how that debt would be paid. Thereafter, defendant *926 Amash allegedly collected moneys from Eienzo and upon default allegedly assaulted him.
The meeting in New Baltimore in Greene County was an overt act in furtherance of the conspiracy to collect the gambling debt.
A conspiracy exists when the parties to it agree to commit a crime and an overt act is committed by one of the conspirators in furtherance of it (Penal Law, §§ 105.05,105.10,105.20).
Subdivision 1 of section 105.25 of the Penal Law provides: “ 1. A person may be prosecuted for conspiracy in the county in which he entered into such conspiracy or in any county in which an overt act in furtherance thereof was committed.”
The contention is made on behalf of the defendant Amash that any act which he may have done was done in Ulster or Albany Counties and consequently the venue in this county is incorrect.
The answer to that contention is that a person may be held as a conspirator although he joins the criminal concert at a point in time far beyond the initial act of the conspirators. If he joins later, knowing of the criminal design and acts in concert with the original conspirators, he may he held responsible not only for everything which may be done thereafter but also for everything which has been done prior to his adherence to the criminal design. (Lile v. United States, 264 F. 2d 278, 281; Marino v. United States, 91 F. 2d 691, 696; People v. Arnstein, 157 App. Div. 766, 770; Lefco v. United States, 74 F. 2d 66, 68.) Consequently, the overt act of one conspirator in Greene County brings all prior and subsequent conspirators within the jurisdiction of this court.
For the reasons stated above the motions to suppress the evidence acquired by eavesdropping are denied, as are the motions for dismissal of the indictment, on the ground that those minutes indicate a sufficiency of legal evidence and the jurisdiction of this court.