THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PETER DI STEFANO, Appellant.

First Department, June 11, 1974.

*Irwin Rochman* for appellant.

*Anthony J. Girese* of counsel (*Lewis R. Friedman* and *Robert A. Goldschlag* with him on the brief; *Richard H. Kuh, District Attorney*), for respondent.

TILZER, J. Defendant appeals from a judgment convicting him after trial (SCHWARTZ, J. and a jury), of the crimes of conspiracy in the second degree (Penal Law, § 105.10) and attempted robbery in the second degree (Penal Law, §§ 110.00, 160.10) and sentencing him to concurrent indeterminate terms of imprisonment not to exceed three years.

The major issue on appeal concerns the propriety of the trial court's denial of the pretrial motion to suppress certain evidence obtained by electronic eavesdropping. The relevant facts are not in dispute. In furtherance of "an investigation into several organized crime figures who were operating in New York County", the District Attorney obtained an eavesdropping warrant permitting interception of conversations transmitted over telephones located in Jimmy's Lounge in New York County (order dated Feb. 3, 1972). The original warrant was valid for a period of up to 30 days (CPL 700.10) and was thereafter renewed and extended. (CPL 700.40; orders dated March 8, 1972; April 7, 1972; May 5, 1972.) In compliance with the Criminal Procedure Law the orders and supporting affidavits specified the nature of the crimes under investigation as well as the names of the individuals whose communications were to be intercepted. (CPL 700.15, 700.20.) It is conceded that neither the defendant nor the crime of robbery was within the scope of the original eavesdropping warrant nor any of the amended orders with the exception of the warrant dated May 5, 1972.

On April 6, 1972, during the course of executing the eavesdropping warrant, the police officers intercepted a conversation between defendant and another person, who concededly was also not within the scope of the wiretap order. Although the electronic device was automatically activated whenever the telephone receiver was lifted, it appears that due to a machine malfunction the first portion of the April 6 conversation was not recorded.

At this point it is to be noted that the testimony indicated that the Assistant District Attorney in charge of the investigation in order "to minimize the interception of communications not otherwise subject [to the eavesdropping warrant]" (CPL

700.30, subd. 7), instructed the officers that "(i)f the conversation of the parties, or the substance was not relevant, or not included in the order, they were to immediately discontinue the electronic surveillance". However, the officers were further instructed that if "it was clear from the beginning of the conversation that the conversation involved a crime or was related to a crime * * * they were to record the conversations and * * * immediately report to [the Assistant District Attorney] that fact so that a suitable amendment could be made to the order."

Returning now to the April 6 conversation, the officer who monitored such conversation testified with respect to the unrecorded portion of the telephone call that he heard the other party tell "Peter DiStefano about a fellow that comes around picking up envelopes." The defendant was "to clock" the movements of that messenger. At that point in the conversation the officer realized that the machine was not operating and apparently believing that the conversation related to the plans for the commission of a robbery, acting in accordance with the instructions previously given by the Assistant District Attorney, turned on the machine, thereby recording the remainder of the conversation.

Although the record on appeal indicates that the Assistant District Attorney was provided with the daily logs of the monitored telephone conversations which he "read * * * every day" the order renewing and amending the eavesdropping warrant dated April 7, 1972, did not contain any reference to the April 6 conversation. Nevertheless, on April 17, 1972, without having made any further application to amend, the officers again monitored several conversations between the defendant and other persons not within the scope of the warrant. Those conversations further implicated defendant in a conspiracy to commit robbery and alerted the authorities as to the approximate time, as well as to the location of the planned crime. Acting upon that information several officers went to the Hotel Commodore where they observed the defendant's movements. However, after a period of time the defendant left the area. It appears that the robbery was aborted because of the messenger's arrival at the hotel earlier than expected. Subsequently, another conversation was intercepted between the defendant and his girl friend in which defendant related certain of the events which occurred at the hotel.

On May 5, 1972, the District Attorney obtained a further order amending and renewing the eavesdropping warrant.

Although the daily plant reports (containing a brief abstract of each intercepted conversation) were submitted on that application, nevertheless, the affidavit did not contain any description or mention of the intercepted conversation of April 6 but referred solely to the conversations and observations related to April 17, 1972.

As indicated, the defendant prior to trial moved to suppress the evidence obtained as a result of the wiretapping. It was argued that the "defendant was [not] within the [purview] of these wiretaps", and further, that CPL 700.65 (subd. 4) which permits the amendment of an eavesdropping warrant to include a "communication which was not otherwise sought", was not complied with since the amendment had not been obtained "as soon as practicable". After a hearing the motion was denied.

As previously stated, it is quite clear that the conversations which were overheard on April 6 and April 17, 1972, related to subject matter and were between persons not within the scope of the eavesdropping orders at the time such communications were intercepted. The contents of such communications and any evidence derived therefrom may be used while giving testimony in a criminal proceeding only upon compliance with CPL 700.65 (subd. 4). That provision states as follows: "When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this article, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable. If the justice finds that such contents were otherwise intercepted in accordance with the provisions of this article, he may grant the application."

The question therefore, is whether the subject telephone conversations and evidence obtained therefrom were admissible as a result of the amended order dated May 5, 1972, which order referred to the crime of robbery and which was based upon a supporting affidavit specifically relating the nature of the communications intercepted on April 17, 1972.

The purpose behind CPL 700.65 (subd. 4) was discussed by the Commission on Revision of Penal Law and Criminal Code as follows: "Section 822 [the predecessor statute to CPL

700.65, subd. 4] relates to a situation where, in the course of executing a valid eavesdropping warrant (which authorizes, of course, the overhearing of a particular described conversation), the applicant or his designated agent unexpectedly overhears an incriminating conversation that is totally unrelated to the crime for which the warrant was issued. A line of authority upholds the seizure and use of evidence not specified in a search warrant but discovered in the course of executing such warrant. Similarly, a valid eavesdropping warrant should allow the use of unexpected conversations relating to a crime other than the one under investigation. Since the question is not altogether free from doubt, cogent reasons exist for dealing with it statutorily, as does § 822.'' (McKinney's 1968 Sess. Laws of N. Y., Memorandum, pp. 2293, 2296.)

Considering first the contents of the communications intercepted on April 17, 1972 and the evidence derived therefrom, we do not believe that such evidence was properly admissible or within the scope of CPL 700.65 (subd. 4). As previously indicated, the provision permitting an amendment to include matter not originally sought was intended to make admissible evidence which was lawfully obtained in the course of executing the warrant but which resulted from unanticipated or unexpectedly overheard conversations, unrelated to the eavesdropping warrant. The police officers and Assistant District Attorney herein, were, since April 6, 1972, alerted to the plans for the robbery and thereafter when they continued to intercept communications 11 days later, which were not within the scope of the eavesdropping warrant, did so for the specific purpose of obtaining further evidence of the new crimes.* Accordingly, it cannot be said that the April 17 conversations were unexpectedly overheard. (See *United States* v. *Cox*, 449 F. 2d 679, 687.) To allow testimony as to the contents of such communications (and with respect to evidence derived therefrom) when the evidence was intentionally obtained, without prior court scrutiny, would permit the District Attorney, in his own discretion to expand the entire scope of the eavesdropping warrant, and to thereafter legitimize such action by a subsequently

---

* It does not appear that it is contended that the April 6 conversation was insufficient to alert the investigators of the new found criminal activity. If that position is maintained, however, it would appear that despite the otherwise sufficient instructions and manner in which the warrant was executed in order to comply with the minimization requirement (CPL 700.30, subd. 7); *United States* v. *Rizzo* (2d Cir. Jan. 17, 1973), that as applied at the time this defendant's communications were intercepted the statutory mandate was not actually followed. (Cf. *People* v. *Castania*, 73 Misc 2d 166.)

obtained court order. The statute was not so intended and if it is interpreted in that manner there would be grave doubt as to its constitutionality. (See *Katz* v. *United States,* 389 U. S. 347; *Berger* v. *New York,* 388 U. S. 41.)

The nature and purpose of the provision permitting amendments to include unanticipated conversations was considered in *People* v. *Ruffino* (62 Misc 2d 653). In that case it was held that a delay of over three months in seeking amendment did not render inadmissible evidence which otherwise was legally intercepted. It was concluded that since only one conversation was intercepted and thereafter the wiretap was immediately discontinued defendant's rights were not affected by the failure to comply with a statutory condition subsequent. However, the court (SHAPIRO, J.) stated (pp. 660–661): "It seems apparent that the purpose the lawmakers had in mind, in requiring an amendment of an outstanding interception order where new criminal matters not specified in the warrant came to light over the wiretap, was to legalize the *continuance* on the wiretap to discover further evidence of the newly disclosed crimes  *  *  * The failure to obey the statutory requirement that an amended order be obtained should bring into play an exclusionary rule only where the interception, *continues after an unprovided-for conversation is overheard,* for it is only the *continuation* of the wiretap which makes judicial supervision necessary for the protection of Fourth Amendment rights of privacy."

Further, the application for amendment must be made "as soon as practicable". That provision is not complied with where there is considerable delay after acquisition of knowledge of the new crimes, and where prior to making the application, the People, nevertheless, continue interception of matters not within the scope of their court authorization.

Accordingly, we conclude that the conversations intercepted on April 17 and the evidence obtained as a result were inadmissible and that the motion to suppress such evidence should have been granted.

A somewhat different problem is presented with respect to the April 6 conversation. That conversation was intercepted without prior knowledge of defendant's activities and accordingly, may be considered to have been unexpectedly overheard and within the scope of CPL 700.65 (subd. 4). If a motion to amend the order had been made to include such conversation we would be confronted with a similar issue as presented in *People* v. *Ruffino* (*supra*), i.e., whether the failure to amend as soon as practicable renders inadmissible evidence otherwise legally

obtained. Of course, the issue herein is further complicated since unlike the situation in *Ruffino,* the People continued to wiretap in search of further evidence, and accordingly, the failure to make a timely application herein, even relating solely to April 6, could be considered more than a technical defect. We need not, however, pass upon this question for several reasons. First, the affidavit in support of the application to amend was limited solely to the conversations and events relating to April 17. While the daily plant reports were submitted, such does not mean that the order extended to each and every conversation set forth in those reports. Such would be entirely too broad, and was neither permissible nor intended. Accordingly, the conversation of April 6 should have been suppressed. In any event, the conversation of April 6, standing alone, was clearly insufficient to support conviction on either the conspiracy or attempted robbery count. (Penal Law, arts. 105, 110.)

Finally, although we need not reach this issue in view of our conclusion that the motion to suppress should have been granted, and the indictment dismissed, we nevertheless note, that in any event, the evidence was insufficient to sustain the charge of attempted robbery second degree. (See *People v. Rizzo,* 246 N. Y. 334.)

Accordingly, the judgment rendered August 31, 1973, convicting defendant of conspiracy in the second degree and attempted robbery in the second degree should be reversed on the law, the motion to suppress granted and the indictment dismissed.

KUPFERMAN, J. (concurring in part and dissenting in part). While I concur in the reversal of defendant's conviction of attempted robbery in the second degree, I would do so for a different reason, and further I would affirm the conviction for conspiracy in the second degree.

The primary evidence against the defendant was obtained through a wiretap at Jimmy's Lounge, a tavern on Avenue A on the lower East Side of Manhattan. The defendant was not the target, and by chance his criminal plans were legally overheard. (See *People v. Gnozzo,* 31 N Y 2d 134.) He, together with others, was preparing to hold up a messenger collecting receipts from various ticket desks at New York hotels from the sale of theatre and sightseeing tickets, etc. It was obvious from the intercepted conversation that when the defendant and his cohort arrived at the front of the Commodore Hotel at Grand Central for the purpose of committing the robbery, they had missed the messenger. Accordingly, while they intended to commit that crime, they had not come " very near to the accomplishment ".

(*People* v. *Rizzo,* 246 N. Y. 334, 337.) However, the conspiracy was clearly proven, and the jury finding should be affirmed, unless the evidence obtained by electronic eavesdropping is suppressed, as the majority would do.

The initial wiretap, which was in furtherance of an investigation regarding organized crime figures operating in New York County, was pursuant to a valid warrant, as renewed and extended (CPL 700.40). The warrant, however, did not have this defendant or the crime of robbery within its scope. The intercepted April 6 conversation, while suspicious, did not at all indicate that a crime was necessarily in the offing, merely having a ticket agency employee at the Royal Manhattan Hotel telling the defendant to watch the messenger. The April 17 conversations had the nub of the proposed crime. On May 5, the application for amendment of the warrant to cover the situation was made. The statute states that an application to cover and retroactively legitimatize the interception be made " as soon as practicable " CPL 700.65 (subd. 4). In my opinion, the formal application, after the event, " becomes a ministerial act " and it cannot be said as a matter of law that a delay of some two weeks (or even one month) has sufficient significance to require suppression of the evidence. (Cf. *People* v. *Hueston,* 34 N Y 2d 116, 122.) In any event, the defendant did not raise the issue of the timeliness of the application to amend at the suppression hearing, and, therefore, the issue should be precluded on this appeal. (See *People* v. *Pobliner,* 32 N Y 2d 356.)

Accordingly, the judgment should be modified to reverse and dismiss the attempted robbery count, and otherwise affirmed.

NUNEZ, J. P., MURPHY and LYNCH, JJ., concur with TILZER, J.; KUPFERMAN, J., concurs in part and dissents in part in an opinion.

Judgment, Supreme Court, New York County, rendered on August 31, 1973, reversed, on the law, the motion to suppress granted and the indictment dismissed.