**Application of Richard MARTUZAS.**

**Civ. No. 1973–127.**

United States District Court,
W. D. New York.

Sept. 24, 1975.

Michael S. Gelacak, Buffalo, N. Y.,
for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New
York (Douglas S. Cream, Buffalo, N. Y.,
of counsel), for respondent.

CURTIN, Chief Judge.

This is a petition for a writ of habeas
corpus. The petitioner, Richard Martu-
zas, was convicted after a jury trial in
Jefferson County Court, on November 4,
1971, of the crime of criminal possession
of a dangerous drug in the third degree.
He was sentenced to an indeterminate
term to have a maximum of five years
and is presently on parole. His convic-
tion was affirmed by the Appellate Divi-
sion, Fourth Department, in July 1972
and leave to appeal to the Court of Ap-
peals was denied in September 1972.
His state remedies are exhausted.

The petitioner was stopped for speed-
ing by two New York State Troopers in
the early morning hours of September
26, 1971. One of the officers made a
search of the passenger compartment of
Martuzas' vehicle and discovered two
bags of marihuana. This contraband
was used as evidence in the trial which
resulted in his conviction. Petitioner

attacks the conviction, contending that the marihuana was the product of an unconstitutional search and seizure and was inadmissible at trial.

Before trial in the state court, a hearing was held on petitioner's motion to suppress. Trooper Gaebel, who discovered the marihuana and arrested Martuzas, testified that the petitioner exited his vehicle immediately upon stopping and met Gaebel at the left rear of Martuzas' car. He arrested Martuzas for speeding while they were at the rear of the vehicle. After the arrest, he went up to the car "looking closely" because he knew the petitioner had been previously convicted for possession of narcotics. State Court Hearing Transcript [hereinafter S.H.Tr.] at 5, 17. He testified that he saw a portion of marihuana leaf about ¾ by ⅜ inches in size. S.H.Tr. at 6. Relying on this, he conducted a complete search and discovered two bags of marihuana under the front seat. Trooper Eisenhauer, the other officer present, testified that Gaebel looked through the window of the car with his flashlight. S.H.Tr. at 22. The floor of the vehicle was littered with paper cups and other trash. S.H. Tr. at 16. The state court judge found the facts as follows:

Well, the findings are brief. The car was stopped, allegedly speeding, that was being operated by Mr. Martuzas, in the early morning hours of September 26, 1971, on both Route 81 and Arsenal Street and Casey Street in Watertown, with a passenger in the car named Cathryn Lynn Guffey. Trooper Gaebel went to the car and asked—it isn't quite clear whether he asked the driver for his license, or whether Mr. Eisenhauer did, but in any event, he was asked for his operator's license and registration and, while the trooper was looking in the car window, he saw what he described as a cannibas [sic] leaf on the floor. He had had training in identifying these, and did identify it as such, and thereafter he searched the car and

found two bags of cannibas [sic] and an eyedropper and a bottle of white powder.

S.H.Tr. at 27, 28.

Because the State of New York did not permit a search incident to a traffic arrest as an exception to the warrant requirement, the state court judge had to determine if there was another basis for the search before he could hold that the evidence would be admissible at trial. *People v. Marsh,* 20 N.Y.2d 98, 281 N. Y.S.2d 789, 228 N.E.2d 783 (1967); *People v. Coleman,* 24 N.Y.2d 1005, 302 N.Y.S.2d 831, 250 N.E.2d 237 (1969). He determined that the leaf was in "plain view" and that this gave the officer the right to search. His conclusions follow:

Now, I appreciate that under *People v. Marsh,* reported in 20 N.Y.2d, at page 98 [281 N.Y.S.2d 789, 228 N.E.2d 783] that an arrest for a traffic infraction, immediately followed by a search, in and of itself does not create reasonable cause for a search. However, there are many authorities, both before and after the Marsh case which holds [sic] that an officer doesn't have to be blind to what he sees after having stopped the car for a traffic infraction, and when the officer saw what he identified as a cannibas [sic] leaf, he had authority to search, and he doesn't have to be blind to whatever he sees with his own eyes. If he saw a cannibas [sic] leaf on the floor of the car, under those circumstances he had reasonable cause for the search and the legal conclusion is that the search was authorized. There was reasonable cause for it.

The motions are denied.

S.H.Tr. at 28.

■ Officer Gaebel had testified that he spoke to Martuzas while they were both behind the Martuzas vehicle. A fair reading of the state judge's decision is that the officer was afforded a "plain view" into the car while he was asking Martuzas for his license. However,

from the vantage point described by Gaebel in his testimony, it is clear that he could not have a "plain view" of the floor of the Martuzas vehicle. Furthermore, assuming that the officer went to the side door of the car, there did not seem to be any reason given in the evidence at the state hearing why this was done. In order for the "plain view" doctrine to support the confiscation, there had to be a valid reason for the officer to be in a position to afford him the plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Thus, after reviewing the state court record and the briefs of the attorneys, this court concluded that the material facts were not adequately developed at the state hearing and that the factual determination was not fairly supported by the record. Because the requirements of 28 U.S.C. § 2254(d)(3) and (8) were met, a hearing was ordered.

At the hearing in this court, Officers Gaebel and Eisenhauer testified again. Gaebel testified that immediately upon stopping his car, Martuzas walked back to the troop car and the initial discussion took place between the Martuzas vehicle and the troop car. His testimony about the critical sequence of events surrounding the search was varied. Initially, Gaebel claimed that he discovered a leaf fragment of what he thought was cannabis while conducting a search for weapons and equipment violations. Federal Hearing Transcript [hereinafter F. H.Tr.] at 8. Later he said that the search was one for weapons or drugs. F.H.Tr. at 29. Finally, he revealed he had conducted two searches, one cursory for weapons and a second and more thorough search for weapons and drugs. F.H.Tr. at 27, 28, 37 and 38. He knew that Martuzas had been convicted of possessing narcotics and, therefore, went back for a closer look into the vehicle because he suspected he would find either weapons or drugs in the petitioner's car. F.H.Tr. at 13, 29. Gaebel said his suspicions were increased because Mar-

tuzas was extremely nervous compared to the other occasions when Gaebel had stopped him. F.H.Tr. at 11, 12.

When he went to the petitioner's vehicle on the second visit, through the open door he saw a leaf fragment which he recognized as cannabis. F.H.Tr. at 37. This led to the complete search which produced the two bags of marihuana. He said that the troop car headlights were on and that there was a street light directly overhead. He had his flashlight pointed at the leaf when he recognized it. F.H.Tr. at 16, 23 and 28.

In addition to the inconsistencies in the testimony before this court as to the number and timing of the searches, there were also discrepancies between the evidence given by Trooper Gaebel at the state court hearing and the testimony given here. At the state court hearing, he said nothing of a second search, nothing about the extreme nervousness displayed by Martuzas, and nothing about the lighting conditions at the scene or about fear of weapons. At both hearings the officer testified that petitioner was allowed to go back to his car and was not watched closely. S.H.Tr. at 12, 13; F.H.Tr. at 27. It is improbable that if the officer actually feared weapons, he would have allowed petitioner to return to his vehicle in the manner described and permitted petitioner's female companion to remain in the vehicle until the search was well in progress. F.H.Tr. at 9. Although the state court judge accepted Gaebel's testimony that he viewed the leaf fragment through a window, and Eisenhauer corroborated it (S.H.Tr. at 5, 22, 27), at the federal hearing Gaebel testified that he looked through an open door (F.H.Tr. at 8, 37) and Eisenhauer testified Gaebel looked through a window (F.H.Tr. at 51), and then he said he could not recall what occurred. F.H.Tr. at 57.

Beyond finding that the officers stopped Martuzas for speeding and arrested him at a point between the two vehicles while viewing his registration documents, it is difficult from this rec-

ord to determine what occurred. Considering the testimony given at both hearings and the obvious serious discrepancies, this court cannot credit the testimony of the trooper that he recognized a minute leaf fragment of marihuana at night on a litter strewn floor. Because the hearing in this court was a mandatory one dictated by 28 U.S.C. § 2254(d), the presumption of regularity of the state court proceeding disappears and the normal burden of proof replaces it. This court finds that under New York law, *People v. Merola*, 30 A.D.2d 963, 294 N.Y.S.2d 301 (1968), the petitioner has satisfied the burden of proving by a fair preponderance of the evidence that his Fourth Amendment rights were violated by the search and seizure. Accepting the version most favorable to the State, that the officer saw and immediately recognized the leaf fragment on the floor of the car as cannabis, still, the writ must be granted. For, according to the final and most probable view of the evidence, Gaebel returned to the vehicle for a second search after an initial equipment check. F.H.Tr. at 37, 38, 43. This was because he wanted to examine for drugs and weapons. Under the circumstances set forth in this record, there was no reason for the second search and, therefore, the doctrine of "plain view" cannot be applied.[1]

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

*Coolidge v. New Hampshire, supra,* 403 U.S. at 466, 91 S.Ct. at 2038.

The search cannot be held as one incident to arrest because New York State did not permit such searches of motor vehicles after traffic arrests at that time. *People v. Marsh, supra.*

■ Finally, the State argued in their brief in the Appellate Division, Fourth Department, that "the arresting officer did not conduct the search incidental to an arrest for the traffic violation."

### POINT I.

The arresting officer did not conduct the search incidental to an arrest for the traffic violation.

In plain view was material that Officer Gaebel identified as marijuana. He thereafter searched the vehicle based upon this identification (*Peo. v. LaBelle,* App.Div.3d [37 A.D.2d 135, 322 N.Y.S.2d 746] ). Officer Gaebel further testified that he had some knowledge of the background of de-

---

1. The precedential value of Mr. Justice Stewart's "inadvertence" theory has been questioned in this circuit. *United States v. Santana,* 485 F.2d 365, 369–70 n. 8 (2d Cir. 1973), *cert. denied,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974) ; *United States v. Morell and Bruzon,* 524 F.2d 550 (2d Cir., decided August 29, 1975). However, Judge Friendly concluded in *Santana* by upholding the introduction of contraband "on a basis consistent with Mr. Justice Stewart's opinion, . . .." *Santana, supra* at 369–70.

In *Coolidge* Mr. Justice Stewart warned that "it is well to keep in mind that we deal here with a *planned* warrantless seizure." *Coolidge, supra,* 403 U.S. at 471 n. 27, 91 S.Ct. at 2041. Since there is some indication from Gaebel's testimony that the second search was planned on the spot and the circumstances of Gaebel's second viewing of the vehicle are so unusual, this court concludes that the introduction of the contraband at trial was improper.

fendant Martuzas coupled with Martuzas immediately calling out "illegal search." Prior to any arrest, Officer Gaebel would have reasonable grounds and probable cause to inspect the vehicle in the manner he did (*Peo. v. Rosello* [36 A.D.2d 595], 318 N.Y.S.2d 393; *Peo. v. Sher*, [68 Misc.2d 917], 329 N.Y.S.2d 2). The leaf of marijuana was not as a result of a deliberate search (see Point I).

Respondent's brief, *People v. Martuzas, et al.*, in the Fourth Department, 40 A. D.2d 591, 335 N.Y.S.2d 376.

The State cannot urge one ground in the state court and take an inconsistent position here. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

It is ordered that a writ of habeas corpus issue and that the petitioner, Richard Martuzas, be released from state custody unless the State of New York commences new criminal proceedings against him within a reasonable time, not later than sixty days from the date of this order.