Henry F. Werker, J.
The above-named defendants were jointly indicted on December 3, 1971 by a Special Term of the February 1971 Grand Jury.
They are charged with criminal possession of a dangerous drug in the third degree contrary to section 220.20 of the Penal Law, criminal possession of a dangerous drug in the sixth degree contrary to section 220.05 of the Penal Law, and criminal possession of certain other instruments or implements adapted for the administering of a narcotic drug contrary to subdivisions 3 and 4 of section 3395 of the Public Health Law.
The defendants by their attorney, William J. Quinlan, Esq., filed with the court an omnibus motion including motions to suppress all of the evidence obtained in connection with this matter whether by eavesdropping or search warrant or without a warrant. The motion was made pursuant to articles 700 and 710 of the New York Criminal Procedure Law and sections 2510 to 2519 of chapter 119 of title 18 of the United States Code, Amendment IV of the United States Constitution, and section 12 of article I of the New York State Constitution.
The suppression hearing in this case was held on March 13 and 14, 1973. The defendant’s brief was filed on May 22, 1973 and the People’s brief on July 23,1973. The latter was delayed by permission of the court due to an intervening Trial Term.
The indictment has its origins in an eavesdropping application by the District Attorney of Rensselaer County and a warrant issued thereon by Honorable Timothy Fogarty, County Judge of that county. The warrant authorized eavesdropping for a 30-day period on a telephone listed in the name of one Lawrence W. Smith of 397 4th Avenue, Troy, New York. The crimes specified in the application and warrant were: criminal possession of a dangerous drug in the third degree (Penal Law, § 220.20); criminal possession of dangerous drugs in the second degree (Penal Law, § 220.22); and conspiracy in the second degree (Penal Law, § 105.10) to commit those crimes. The telephone number involved was 237-8492. This warrant was amended by Judge Fogarty on November 30, 1971 by including a second number .listed to Lawrence W. Smith, namely 237-0351 for the same period of time.
Surveillance of these numbers was begun on December 1 and terminated on December 5, 1971. Live monitoring of the taps was limited to between 5 and 10 hours, although the taps were in operation for approximately 100 to 120 hours.
As a result all. conversations not pertinent to the crimes mentioned were recorded. By December 3, 1971 sufficient informa *12 tion had been obtained from the eavesdropping and allegedly from an informant for one of the State Police Investigators to make application to Honorable G-eorge Carl, Town Justice of the Town of Catskill, for a search warrant against premises known as 93 North Vernon Street, Athens, New York, and the person of Maynard Smith, brother of Lawrence Smith and of any other person “ present thereat or therein who may be found to have such property in his possession or under his control or to whom such property may have been delivered ’ ’.
The affidavit supporting the application for the eavesdropping warrant was made by Patrick K. Hynes, an investigator of the Bureau of Criminal Investigation of the New York State Police on November 23,1971.
The affidavit supporting the search warrant was made by Warren Curtis, an investigator of that Bureau on December 4, 1971 who together with Hynes, Nicholas Lubovic and Bruce McCulley formed the Narcotics Unit of Troop G- of the State Police at Loudonville, New York.
During the course of his examination, Warren Curtis testified that he had a conversation with a confidential informant to the effect that Maynard Smith and Lawrence Smith had a partnership type of operation. This conversation was used in part to obtain the search warrant. Although these facts were known to Curtis before the application for the eavesdropping warrant was made, Hynes in his application to Judge Fogarty did not mention Maynard Smith as being one of the persons with whom Lawrence Smith was trafficking in drugs.
After obtaining the search warrant, Curtis maintained surveillance on the 93 North Vernon Street premises until 10:00 a.m. on December 5, 1971 when he was joined by Investigator James Salmon of the BCI. During the course of the surveillance they observed a camper motor vehicle arrive at the premises and subsequently change its parking space to an area near the back door of the house, and then observed traffic from the house to the camper and back. They also observed a Studebaker car arrive at the premises and then leave, which car later was observed arriving at the Troy address of Lawrence Smith. A package was taken from the car to the Lawrence Smith address. That address is a multiple dwelling and there was no showing that the package in fact was delivered to Lawrence Smith’s apartment. They also observed two females leave the premises in a Cadillac and return. Meanwhile the two officers were joined by Officer Hynes and Lubovic and James Mills from the Leeds Barracks,
*13 At or about 8:00 p.m. the Cadillac left the premises at 93 North Vernon Street with the defendants Wendy Weller, Pamela Hurd, Robert Hurd and Maynard Smith in it. The officers left the place of surveillance, followed the Cadillac, and stopped it on Route 385 approximately 2% to 3 miles from the premises to be searched. Maynard Smith was driving the vehicle. He was asked to get out, and as he did, Officer Lubovic saw a butt of a cigarette drop from his hand. This was picked up arid proved to be a marihuana cigarette. The automobile was searched and some pills were found in the glove compartment. All of the persons in the ear were arrested and returned to 93 Vernon Street.
The time elapsed from the time the Cadillac left until all returned was approximately 20 to 25 minutes. No one surveilled the premises during this period of time.
There, Investigator Hynes exercised the authority given in the search warrant and kicked in the door of the house, with Investigator Lubovic. They entered the kitchen and found Michael Kennedy in the kitchen talking on the telephone. There was a quantity of marihuana in a bowl on a table, some plastic bags and an Ohaus scale. Subsequent search disclosed a quantity of marihuana seeds, pipes and other pills. In particular in one bedroom Robert Hurd’s wallet was found and some seeds in a dresser. After a two-hour search, Investigator Mills found '24 bales of marihuana in a closet or pantry the door of which was closed.
None of the four defendants were in the premises when it was entered by the police. They were subsequently brought into the premises by the police.
The defendants were subsequently arraigned before Judge "Gael and, after a preliminary hearing, were held for the Grand Jury, which subsequently indicted them.
The evidence obtained by the execution of the eavesdropping and search warrants must stand or fall upon the validity of those warrants and the affidavits and applications submitted with them as well as the manner in which the warrants were executed.
It is the burden of the defendants in this suppression hearing to prove that the search and seizure were illegal.
It is their claim that the eavesdropping warrant is defective because:
1.) It does not require that the eavesdropping “ shall be conducted in such a way as to minimize the interception of communication not otherwise subject to eavesdropping ’ ’, as mandated by CPL 7.00.30 (subd. 7).
*14 2. ) In the execution of' the warrant there was in fact no minimization as required.
3. ) It does not contain the notice requirement set forth in OPL 700.50 (subd. 3_).
4. ) In fact no notice was ever given under that section of the law.
5. ) It contains an unpermitted delegation of authority as to the law enforcement agency authorized to intercept the communications, contrary to CPL 700.30 (subd. 5).
6. ) With respect to the search warrant, since its issuance was dependent, at least in part, upon illegally intercepted communications, that warrant is tainted as fruit of the poisonous tree and any evidence obtained by its execution must for that reason be suppressed.
It is the People’s contention that these requirements of the statute are not mandatory, but that we must look at the manner in which the warrant was executed to find out whether it has been legally executed and, if we so find, then the sections of the Criminal Procedure Law have been complied with and any evidence obtained may not be suppressed.
Furthermore, with respect to the execution of the eavesdropping warrant, that the defendants have the burden of proving that other than authorized interceptions were made. They further contend that since the eavesdropping was in effect for only 4% to 5 days, the failure to live-monitor could not affect defendants’ rights.
The People rely upon United States v. Focarile (340 F. Supp. 1033, affd. sub nom. United States v. Giordano, 469 F. 2d 522) with respect to minimization.
The case before this court differs from Focarile in that the order in Focarile contained a provision for minimization. The order here does not. Further, this court is unwilling to subscribe to the principle that if the affidavit shows probable cause to believe that a conspiracy is in progress the minimization rule should be ignored.
It is basic to the concept of the Fourth Amendment that no search or seizure be permitted without probable cause to believe a crime is about to be or has been committed and the issuance of a warrant based upon such reasonable cause by impartial judicial authority. Wiretapping is prohibited except as permitted by the statutes heretofore set forth.
Indeed it was prohibited by Federal statute and the issue for years before the State courts was whether they could admit into evidence material obtained in violation of the Federal statute.
*15 At the outset here the wiretap order did not comply with either the requirements of the New York statute or the Federal statute in that it failed to provide for minimization. No evidence was presented to the court that this failure was the result of inadvertence. Such a failure must result in a suppression of the evidence, since this requirement is essential to the protection of the individual in avoiding the general warrant nature of an eavesdropping warrant. The statute was written to avoid the general warrant proscription of Berger v. New York (388 U. S. 41).
The New York statute which was written in accordance with the opinion clearly sets forth what the warrant s ( must ’ ’ contain. We disagree with the People’s contention that the word (e must ” is not a mandate. (People v. Haskell, 9 N Y 2d 729; People v. Holder, 69 Misc 2d 863; People v. Castania, 73 Misc 2d 166.)
Similarly the language of the order, with respect to notice, waived it until further order of the court. The language of the statute is that it may be waived for a period not in excess of 90 days. after termination of the eavesdropping warrant or extension thereof unless exigent circumstances are shown requiring the postponement by order of the issuing Justice for a reasonable time. (CPL 700.50, subd. 4.)
Again the failure of the New York authorities to adhere to the plain language of the statute must result in a holding that the warrant was invalid. (United States v. Eastman, 465 F. 2d 1057.)
No evidence of exigent circumstances was presented by the People showing a need for this Idnd of order or the postponement of the notice.
The minimization provisions and the provision for notice are prerequisites to the issuance of a valid eavesdropping order. They differ considerably from the purely ministerial acts of custody which were discussed in People v. Sher (68 Misc 2d 917, 70 Misc 2d 403).
If there is a failure to comply with the provisions of the enabling statutes, then prima facie the wiretap is unreasonable. (United States v. Leta, 332 F. Supp. 1357.)
After an examination of the eases cited by the People and in particular People v. Gnozzo and People v. Zorn (31 N Y 2d 134), two cases with which this court is in complete agreement, we find no evidence that the trend of decisions is away from the strict interpretation of the eavesdropping provisions- of the Criminal Procedure Law. Indeed in this case since the police *16 knew of the relationship of Maynard and Lawrence Smith before they applied for the eavesdropping warrant it is questionable whether they complied with CPL 700.30 (subd. 2) relating to the identity of the person if known, whose communications are to be intercepted.
Furthermore, the statute is silent as to the authority of the court to delegate to one agency the power to designate another agency to execute the wiretap order. There would seem to be no inherent power to do this and no reason for doing so. This court is sure that, upon making the application, it is known what agency will conduct the eavesdropping. In People v. Castania (73 Misc 2d 166, supra) it was indicated that this was a questionable practice. In this court’s opinion it is an illegal-practice. (United States v. Giordano, 469 F. 2d 522, 530.) “ We cannot relegate provision after provision to oblivion by terming each a mere ‘ technicality ’ — or else we leave the statute a shadow of itself, an apparition without substance ”.
The People also contend that “ the courts now recognize that the Legislature never intended to allow the criminal element to defeat article 700 of OPL by the subterfuge of a code, language or by guarded conversations ’ ’.
This court does not recognize that legislative intent. It agrees with the statement in United States v. Narducci (341 F. Supp. 1107, 1115) that: “The necessity for strict compliance with the statute in a wiretap situation stems just as much from the precedent — setting example of condoning laxity which' could lead to further laxity in years to come, with serious consequences to personal liberties as from concern over the rights of the accused in a given case ”.
Under these circumstances what was said in United States v. Focarile (340 F. Supp. 1033, affd. 469 F. 2d 522, 531, supra) is. applicable. ‘ ‘ Similarly when government consistently tramples upon those parts -of the law that do not suit its momentary purpose and seeks to justify its conduct by sophistic argumentation neither respect for the law nor -societal order is promoted.”
It is most regrettable that the purpose of the statute is being defeated by the very agencies which are charged with its enforcement. Either through haste, inadvertence, ignorance or at times possibly out of a desire to test the limits to which courts will permit them to ignore the plain language of the statute, law enforcement and the administration of justice are being frustrated. It is also unfortunate that” the diligent and dedicated efforts of police officers to obtain evidence are voided by the failure of those trained in the law to prepare their papers in *17 accordance with the statute. When “ Government becomes a law breaker it breeds contempt for law (Olmstead v. United States, 277 U. S. 438, 485.)
In view of this court’s determination that the warrant was defective in these three particulars it is not necessary to go into the question of minimization with respect to the actual execution of the warrant. Suffice it to say that at most 10% of the conversations were live-monitored and all other conversations were recorded. That would be sufficient to consider that there was no minimization and for that reason the evidence should be suppressed. The evidence obtained by the eavesdropping order and amendment is suppressed.
The search warrant was, at the time of its issuance, based upon information providing probable cause to believe that the crimes specified in it were or were about to take place at the North Vernon Street premises and that Maynard Smith was involved. The affidavit of Warren Curtis was based in part upon the information of a confidential informant and partially upon the transcribed conversations which have now been suppressed. The only portion of the affidavit with respect to the information given by that confidential informant insofar as Maynard Smith is contained in paragraph 3: “ Further he was reporting that Maynard Smith of 93 North Vernon Street, Town of Athens, New York was trafficking in drugs. That he was reported then as being a quantity supplier of marihuana, LSD and other types of narcotic and dangerous drugs, cutting and packaging them at his residence in Athens, New York ”.
In the opinion of this court this allegation in the affidavit \fithout more would not have furnished the requisite probable cause for the issuance of the no-knock warrant. The proscribed transcribed telephone conversations furnished the details essential to a finding of probable cause. Consequently any contraband acquired either at the premises or, on New York State Highway 385 where the Cadillac was stopped for purposes of •searching Maynard Smith became fruit of the poisonous tree and must also be suppressed.
The reasons were expressed in Nardone v. United States (308 U. S. 338, 340, 341).
“ The burden is, of course, on the accused-in the first instance to prove to the trial court’s satisfaction that wire-tapping was unlawfully employed. Once that is established — as was plainly done here — the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. *18 This leaves ample opportunity to the Government to convince the trial Court that its proof had an independent origin.”
“ What was said in a different context in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, is pertinent here: ‘ The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be Used at all.’ See Gouled v. United States, 255 U. S. 298, 307. A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose.
“ Here, as in the Silverthorne case, the facts improperly obtained do not1 become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it ’ simply because it is used derivatively.”
The defendants here have sustained the burden of proving that the evidence obtained against them was obtained as a result of an illegal search • and seizure. The evidence thus obtained, -either by the eavesdropping warrant or the search warrant, is suppressed.