**UNITED STATES of America**

**v.**

**Anthony J. CARUBIA et al.,**
**Defendants.**

**No. 72 CR 725.**

United States District Court,
E. D. New York.

March 25, 1974.

Edward John Boyd V, Acting U. S. Atty., EDNY, by Fred F. Barlow, Special Atty., Brooklyn, N. Y., for plaintiff.

James J. Hogan, Miami Beach, Fla., for Harris.

Michael Levi Matar, New York City, for Katz.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendants were indicted on three counts of gambling activities in violation of 18 U.S.C. §§ 1084 and 1952 and conspiracy to violate the foregoing statutes. Defendants Harris and Katz challenge the validity of the indictment by a broadscale attack on the legality of State-authorized eavesdropping warrants and interceptions of communications made pursuant thereto. They seek by a voluminous motion to undermine the indictment by means of suppression of the intercepted communications and derivative evidence upon which the indictment appears to be founded.

Three State court orders and subsequent extensions signed by Justice Frank D. O'Connor are involved. The first is an eavesdropping warrant signed on September 10, 1971, authorizing the interception of oral communications on

the premises of the Long Island Veterans Social Club, 20–15 Steinway Street, Astoria, New York. This warrant was effective between September 13, 1971 and October 12, 1971, and was twice extended until December 11, 1971. On September 21, 1971, a second warrant was signed, authorizing the interception of wire communications over telephone number 728–9176, also located at 20–15 Steinway Street, from September 22, 1971 to October 21, 1971. The third warrant, signed on October 15, 1971 and effective until November 13, 1971, authorized interception of wire communications over telephone numbers 478–8200, 1, 2 and 3, listed to Distinctive Tours Limited, located at 91–31 Queens Boulevard, Forest Hills, New York.

The third warrant was directed against communications to and from defendant Carubia. The warrant was extended on November 12, 1971 until December 13, 1971, additionally authorizing the interception of communications of defendant Katz. Defendant Harris alleges that during the course of this interception his communications were intercepted. He further alleges that the application for the second warrant directly resulted from the conversations overheard under the first warrant, and that the application for the third warrant grew out of the monitorings under the first and second warrants.

## I.

### *The Constitutionality of the Federal and State Wiretap Statutes*

■ Defendants assert that the federal statutes contained in Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510 et seq., and the State statutes in N.Y. Criminal Procedure Law (CPL) Article 700, McKinney's Consol.Laws, c. 11–A are unconstitutional on their face. The federal issue is presently before the Supreme Court in

United States v. Giordano, 469 F.2d 522 (4 Cir. 1972), cert. granted, 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194 (1973). The constitutionality of these statutes has heretofore been uniformly upheld. See United States v. Manfredi, 488 F.2d 588, 597 (2 Cir. 1973); United States v. Tortorello, 480 F.2d 764, 772–775 (2 Cir.) (and cases cited in n. 6), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973).[1]

Defendants particularly contest the constitutionality of the notice of eavesdropping provisions of the federal and State statutes. 18 U.S.C. § 2518(8)(d) provides that the judge issuing an order shall notify the persons named in the order within a reasonable time after its termination but in no event later than 90 days. CPL § 700.50(3) contains a nearly identical provision. In addition, CPL § 700.50(4) provides that the notice required under § (3) may be postponed by order of the issuing judge for a reasonable period of time on a showing of exigent circumstances.

Defendants contend that § 2518(8) and the State eavesdropping laws are unconstitutional on their face in that they fail to require (1) a showing of exigent circumstances prior to the dispensing of notice of eavesdropping and (2) a "return on the order", or any other form of "notice to the party trapped." Evidently defendants have overlooked CPL § 700.50(3), (4). Moreover, in United States v. Manfredi, *supra* at 601–602, the Court of Appeals rejected a claim that postponement of notice of surveillance was violative of the federal and State provisions, affirming the district court's finding that the postponement authorized by the State judge was reasonable under all the circumstances. In so doing, the court by implication upheld the constitutionality of the State as well as federal notice of eavesdropping provisions. See also United States v. Tortorello, *supra* at 774.

---

1. The sole case holding the federal wiretap law unconstitutional, upon which defendants rely, is United States v. Whitaker, 343 F. Supp. 358 (E.D.Pa.1972), which was reversed in United States v. Whitaker, 474 F. 2d 1246 (3 Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006 (1973).

## II.

*Probable Cause*

Underlying many of defendants' ·claims is their contention that no probable cause was demonstrated for the issuance of the interception orders and extensions.

Supporting the application of District Attorney Thomas J. Mackell for the September 10th warrant was the affidavit of Detective Doherty. Doherty stated that he had been observing activities at the Long Island Veterans Club during late August and early September. The club was frequented by a large number of individuals, all of whom had prior arrest records. Most of these people had previously been arrested on gambling charges. The operations of the club and the visits by its apparent members were indicative of ongoing gambling activities. The club was generally open between 11:00 a. m. and 8:30 p. m. and was particularly active at hours immediately prior to racing and sporting events. Visitors remained in the club for short periods of time, generally not exceeding one-half hour. Numerous individuals were seen entering the club perusing small slips of white paper and exiting counting money. On one occasion Doherty retrieved a piece of paper which had been thrown away by a person leaving the club. It contained a point spread on professional baseball and football games. In short, the supporting papers established probable cause for issuance of the September 10th order.

The supporting papers for the September 10th order also made clear that law enforcement officials were investigating a large-scale gambling operation in which the Long Island Veterans Club was a drop-off point for bets and money for ultimate delivery to other persons. The club was frequented by 40 to 50 individuals. Investigation of participation by these persons, as well as by couriers and unknown recipients, clearly justified subsequent extension orders, as well as the September 21st and October 15th orders and extensions.

Interceptions authorized pursuant to the first order confirmed that the club was being utilized for the placing of bets. These combined with the facts previously set forth provided probable cause for the issuance of the orders covering the telephone subscribed to by the club and the telephone numbers listed to Distinctive Tours, Inc. (of which defendant Carubia was president) directed at conversations of individuals seen, overheard or mentioned in prior surveillance and interception.

Defendants in particular attack the order extending the October 15, 1973 order, asserting that the purposes of the wire interception had been achieved. However, as previously noted, the application papers reveal that the State was investigating an extensive operation and seeking to obtain evidence concerning numerous participants, including "the names and whereabouts of the kingpins of the operation and the ultimate destination and receiver of the money transferred . . . ." (Affidavit of Walter J. Lewis, November 12, 1971.) While probable cause may have existed for the arrest of various individuals, the trail did not end there. Cf. United States v. Lanza, 341 F.Supp. 405, 419–420 (M.D.Fla.1972). As the court there noted (at 420),

[t]o suppose that the investigation should have been terminated once the bottom of the ladder had been found, once the persons who took individual wagers had been identified, is unrealistic. These are but the tip of the iceberg; they can always be replaced. To root out the offense, those who are ultimately responsible for its existence and organization must be found, and the affidavit amply demonstrates that this would be impossible by any means other than by using monitoring to observe the actual transaction of business between the sellers and their superiors.

The supporting applications clearly demonstrate that justification for the interceptions had not terminated and hence that there was probable cause for extending the orders.

### III.

### *The Legality of the Warrants under 18 U.S.C. § 2518 and CPL § 700.30*

Defendants attack all three warrants on four principal grounds, claiming that they fail to provide

(a) a statement of the particular offense to which they relate as required by 18 U.S.C. § 2518(4)(c);

(b) identification of the person authorizing the application as commanded by 18 U.S.C. § 2518(4)(d);

(c) for minimization of communications not subject to interception as required by 18 U.S.C. § 2518(5) and CPL § 700.30(7); and

(d) for termination of interception upon settlement of the authorized objective pursuant to 18 U.S.C. § 2518(5) and CPL § 700.30(7).

(a) *Statement of the particular related offense.*

18 U.S.C. § 2518(4)(c) requires that each order authorizing the interception of communications contain a statement of the particular offense to which the communications relate. The warrants in controversy are specifically directed to communications related to criminal possession of gambling records and promoting gambling in violation of Article 225 of the N.Y.Penal Law, McKinney's Consol.Laws, c. 40.

Defendants basically argue that the failure of the warrants to specify whether the related offenses were misdemeanors or felonies constitues a failure to comply with § 2518(4)(c). The premise for this contention is defendants' reading of 18 U.S.C. § 2516 which they assert only authorizes state law enforcement officials to apply for and execute wire interceptions for certain crimes punishable by imprisonment for more than one year. Thus they reason that if the offense designated were a misdemeanor, wire interceptions would be prohibited.

■■ A mere statement of defendants' argument reveals that their motion really contests the validity of the warrants under § 2516(2), and not § 2518(4)(c). The warrants adequately complied with the offense designation requirement in § 2518(4)(c), so that it was unnecessary to designate the degree of the offenses involved. Cf. United States v. Mainello, 345 F.Supp. 863, 872 (E.D.N.Y.1972); see also, United States v. Tortorello, *supra* at 780. The court concludes, moreover, that the warrants *were* authorized under § 2516(2), which clearly permits interceptions for gambling offenses, whether misdemeanors or not.

Section 2516(2) provides that the principal prosecuting attorney of the State or any political subdivision thereof, if authorized by State statute, may apply for an order permitting the interception of communications

"when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses."

Defendants contend that the clause "and punishable by imprisonment for more than one year" limits all the listed offenses, and that the statute authorizes interceptions only in respect of felonious conduct.

No support is offered for this construction other than defendant Katz's reliance on the grammatical principle of the "doctrine of the last antecedent." According to him that doctrine provides that where a list of words is modified by a clause appearing at the end, the

clause modifies only the last antecedent word unless it is separated by a comma, in which case the clause modifies all of the preceding words and not just the last antecedent, citing T. I. McCormack Trucking Co. v. United States, 251 F. Supp. 526 (D.N.J.1966). Since the clause in question is preceded by a comma, defendant maintains that "application of the doctrine, and sound grammatical construction, yields the conclusion that the quoted clause modifies each and every offense theretofore listed in the statute" (Katz brief, p. 14).

■ The court rejects defendant Katz's argument for two reasons. First, the very case relied upon makes clear that the doctrine is not an absolute rule as defendant has asserted. T. I. Mc-Cormack Trucking Co. v. United States, *supra* at 531. Second, the doctrine is simply one aspect of grammatical construction in general, as the court emphasized:

> [T]he long standing rule [is] that a modifying phrase refers only to the last antecedent phrase or word which it can *reasonably* modify. (Emphasis supplied.)

*Id.* at 533.

Here it is quite clear that the statute would be read more reasonably if the clause modifies only the phrase "other crime," resulting in a grammatical phrase "other crime dangerous . . . and punishable . . . ." Under this construction two adjectives would be joined together by the conjunction "and." Under defendant's construction the conjunction would have to be read as joining the adjective "punishable" with a list of nouns and would render the sentence ungrammatical.

2. "The interception of wire or oral communications by State law-enforcement officers could only be authorized when it might provide, or has provided evidence of designated offenses. (See McNally v. Hill, 55 S.Ct. 24, 293 U.S. 131, 136 [, 79 L.Ed. 238] (1934).) Specifically designated offenses include murder, kidnaping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana, or other dangerous drugs. All other

■ In any event, the legislative history of § 2516(2) reveals that the clause in question modifies only the catch-all category of "all other crimes."[2] Congress made it clear that the statute was not simply aimed at major crimes but that each listed offense was chosen "either because it is intrinsically serious or because it is characteristic of the operations of organized crime," S.Report No. 1097, 90th Cong., 2d Sess., 1968 U.S. Code Cong. and Admin.News, p. 2186. Of course, gambling is a characteristic operation of organized crime. See, e. g., Statement of Findings and Purpose, Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922.

Furthermore, the analogous list of offenses for which communication interceptions may be applied for by federal prosecutors, 18 U.S.C. § 2516(1), includes a number of offenses punishable as misdemeanors, e. g., 29 U.S.C. § 186(d); 21 U.S.C. § 841(b)(3); 21 U.S.C. § 844(a).

The court is unwilling to rely upon dicta to the contrary in United States v. Tortorello, 342 F.Supp. 1029, 1035 (S.D. N.Y.1972), aff'd 480 F.2d 764 (2 Cir. 1973), and United States v. Lanza, *supra* at 413, since it does not appear that this question was raised by the parties therein.

(b) *The identity of the authorizing individual.*

Defendants contend that the warrants fail to disclose the identity of the person authorizing interception applications as required by § 2518(4)(d). All three warrants recite that they were issued upon application of Thomas J. Mackell, District Attorney, County of Queens, empowered to authorize applications under the federal and State statutes.[3]

crimes designated in the State statute would have to be 'dangerous to life, limb, or property, and punishable by imprisonment for more than 1 year.'"
S.Report No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News, p. 2187.

3. Section 2516(2) provides in pertinent part:
"The principal prosecuting attorney of any State, or the principal prosecuting at-

**1106**

### (c) Provision for minimization.

■ Defendants' assertion that the warrants fail to provide for minimization as required in 18 U.S.C. § 2518(5) is largely frivolous. The second warrant, dated September 21, 1971, and the third warrant, dated October 15, 1971, each contained a paragraph requiring minimization. The contention that these paragraphs do not clearly state which conversations were to be intercepted plainly overlooks the specific reference to communications "authorized herein" which are extensively described elsewhere in the orders.[4]

■ The first warrant, dated September 10, 1971, it is true, contains no express minimization provision. This omission places into question the validity of the warrant. See United States v. Manfredi, *supra* at 597–598. However, the Court of Appeals in *Manfredi, supra* at 598, pointed out that the validity of a State warrant is clearly a question of State law. The court noted that the failure to include a minimization directive in a warrant order has been viewed differently by New York State judges.[5] Id. As the warrant order in *Manfredi*

was supported by an affidavit which contained an agreement to limit the seizure of telephone conversations to those specifically pertaining to previously mentioned violations of the Penal Law, the court concluded that it was unnecessary to resolve the conflict in State law, stating:

> We feel it proper to read both the orders themselves and the minimization language of the supporting affidavits in "a commonsense and realistic fashion." See United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L. Ed.2d 684 (1965) (probable cause); United States v. Desist, 384 F.2d 889 (2d Cir. 1967), *aff'd*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). We read CPL 700.30(7) also as a summation of the more specific requirements of 700.30 subd. 1–subd. 6, all of which lead to "minimization." So reading the state statute and the orders and affidavits, we do not find the orders vitiated by virtue of omission of the talismanic minimization language.

Although the September 10th order challenged here did not expressly pro-

---

torney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge . . . ."

CPL § 700.20(2)(a) provides:

"2. The application must contain:

"(a) The identity of the applicant and a statement of the applicant's authority to make such application . . . ."

CPL § 700.05(5) provides:

" 'Applicant' means a district attorney or the attorney general. If a district attorney or the attorney general is actually absent or disabled, the term 'applicant' means that person designated to act for him and perform his official function in and during his actual absence or disability."

4. The September 10th eavesdropping order, for example, described the type of conversations sought to be intercepted as

"[c]onversations regarding the placing of bets, the amounts of same, the players, the

persons taking the bets, the identity of the king-pins of the operation, the location of gambling records, wire-rooms, and the ultimate destination and receiver of the money transferred therein." (p. 2.)

5. New York state judges have construed this requirement in different ways, Justice McGrover in People v. Solomon, 74 Misc. 2d 926, 346 N.Y.S.2d 938, 941 (Sup.Ct. 1973), holding that omission of that specific directive was "nothing more than a 'de minimis' oversight," which would not vitiate an eavesdropping order, while Judge Werken in People v. Kennedy, 75 Misc.2d 10, 347 N.Y.S.2d 327 (Greene Cty.Ct.1973), held a wiretap order fatally defective for failure to comply with the 700.30 requirement. *Compare* People v. Sher, 68 Misc.2d 917, 329 N.Y.S.2d 2 (Greene Cty.Ct.1972), *with* People v. Hueston, 42 A.D.2d 860, 347 N.Y.S.2d 78 (1973) (3–2 decision) (re notice), *and* People v. Palozzi, 74 Misc.2d 774, 346 N. Y.S.2d 595 (Monroe Cty.Ct.1973).

United States v. Manfredi, *supra* at 598.

vide for minimization, it did comply with the "more specific requirements of [CPL §] 700.30(1)–(6)." In light of the supporting affidavits, which detail the specific nature of the eavesdropping to be undertaken, the omission of a specific minimization directive was no more than a "de minimis" clerical error.

The supporting papers clearly reveal that the Long Island Veterans Social Club whose premises were bugged was thought to be a front for gambling activities. The supporting affidavit of Detective Doherty indicates the hours of principal activity at the club. Further, the order lists eight persons whose communications were sought to be intercepted. It also specifies the type of conversations sought. Taking the order and affidavits as a whole, cf. United States v. Manfredi, *supra*; United States v. Tortorello, *supra*, as well as the circumstances revealed therein, the order does in fact provide for the minimization of communication interceptions, severely limiting the discretion of the executing agents. Cf. United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

It should also be noted that the September 10th order, the only order not containing a specific minimization provision,[6] was not directed against any of the defendants herein. The exact nexus between the three warrant orders is unclear. However, none of the defendants was apparently a party to any communication intercepted at the Long Island Veterans Social Club.[7] Thus, it is doubtful whether any of the defendants has standing to challenge the validity of the first order. Compare United States v. Poeta, 455 F.2d 117, 122 (2

Cir. 1972) (no standing); United States v. Ceraso, 355 F.Supp. 126, 127 (M.D. Pa.1973) (no standing), with United States v. Bynum, 475 F.2d 832, 835–836 (2 Cir. 1973) (standing). See also United States v. Tortorello, *supra* at 770–772 (standing to challenge federal statutes).

(d) *Lack of provision for termination.*

Defendants contend that all three warrants are defective for failure to contain a statement that interception must terminate upon attainment of the authorized objective, under 18 U.S.C. § 2518(5) and CPL § 700.30(7). Defendants note that two of the orders (September 21, 1971; October 15, 1971) originally contained such provisions but they were stricken.

 It is clear from the district attorney's affidavits that he was applying for orders which would allow eavesdropping for the full 30-day period. Together with the supporting affidavits of various detectives, his affidavits provided sufficient basis for 30-day orders. See *supra* pp. 1103–1104. Cf. United States v. Poeta, *supra* at 120–121. Moreover, the removal or omission of the clauses was fully consistent with a preceding paragraph in all three orders, that the eavesdropping was *not* to terminate when communications of the type described in the orders were first obtained.[8] In any event, the court does not read the federal and State statutes as mandating a provision that the interception must terminate upon attainment of the authorized objective, so long as the orders are to terminate at the end of 30 days. Cf. United States v. Tortorello, *supra* at 770–771, 773–774.

---

**6.** The extensions of the September 10th order did include minimization provisions.

**7.** As defendant Carubia has never formally made a motion directed to the wiretapping, it is unclear whether any of his communications were intercepted in the course of the September 10th order. However, it would appear from the orders, applications and supporting affidavits that none of his conversations were intercepted.

**8.** *Cf.* United States v. Poeta, *supra*, where the Court of Appeals found that the striking of a non-termination clause (required under 18 U.S.C. § 2518(4)(e)) was an inadvertent clerical error, which did not cause the order therein to terminate upon interception of the first pertinent conversation. Here, as noted, the presence of such a clause strongly supports the view that the absence or striking of "attainment of objective clauses" was intentional.

## IV.

*The Applications*

Defendants also attack the applications for all three warrants on a number of grounds. These will be dealt with *seriatim*:

 (1) The applications were not sworn to before the State court and District Attorney Mackell did not personally appear before the court. Resolution of these factual questions is unnecessary since the Court of Appeals rejected similar claims in United States v. Tortorello, *supra* at 776–778.

(2) The applications fail to identify the authorizing officer. The court has previously dealt with this contention, *supra* p. 1105.

(3) The applications did not contain a particular description of the type of communications sought to be intercepted. A reading of the applications and supporting affidavits refutes this claim.

(4) Two of the three applications (September 10, 1971; September 21, 1971) fail to contain a full and complete statement of the details as to the particular offense involved. The court has previously dealt with this contention, *supra* pp. 1104–1105.

 (5) The applications did not contain full and complete statements as to the use of other investigative procedures. However, the supporting affidavits indicated that use of undercover policemen to enter the club or to meet with the investigators was impossible under the circumstances; that physical surveillance would be insufficient and might jeopardize the investigation. These facts, taken together with the type of offenses being investigated, provided at least as much, if not greater, support for the issuance of these orders as was upheld in United States v. Bynum, 485 F.2d 490, 499–500 (2 Cir. 1973).

(6) The applications fail to establish probable cause. The court has previously dealt with this contention, *supra* pp. 1103–1104.

In summary, the court denies defendants' motions in all respects.[9]

As the court has previously indicated to counsel it will order the holding of a minimization hearing. As it has also informed them, the court expects counsel to review the tapes and transcripts and (1) reach agreement as to their accuracy; and (2) isolate the specific items intercepted which are actually challenged as beyond authorization of the orders upheld herein.

So ordered.

---

9. The court is aware that it has not dealt with three questions raised by defendants' motions:

(1) the genuineness of the signature of Justice O'Connor on the November 11, 1971 extension order;

(2) the custody and sealing of the recordings obtained; and

(3) the failure to serve defendant Katz with an inventory. *See, e. g.,* United States v. Cafero, 473 F.2d 489, 498–500 (3d Cir. 1973).

These matters may be dealt with at the time of the minimization hearing.