STATE of Minnesota, Appellant,

v.

Mara Therese QUINN, et al.,
Respondents.

No. C7-88-14.

Court of Appeals of Minnesota.

May 10, 1988.

Review Granted June 29, 1988.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Toni A. Beitz, Asst. Co. Atty., Minneapolis, for appellant.

Michael McGlennen, McGlennen & Clemons, Minneapolis, for Respondents.

Heard, considered and decided by HUSPENI, P.J., and PARKER and MULALLY *, JJ.

## OPINION

PARKER, Judge.

This is a pretrial appeal by the state from an order suppressing evidence developed from a wiretap authorized by a wiretap warrant, Minn.Stat. § 626A.06 (1986). We affirm.

### FACTS

Respondents Mara Quinn, Jerry Saliterman and Freida Opitz are defendants in criminal prosecutions for receiving stolen property, conspiracy to receive stolen property, and theft by swindle. Quinn is the owner of a house located at 1012 Thomas Avenue South in Minneapolis that police suspected was the center of a shoplifting and fencing operation.

The Hennepin County Attorney applied for a warrant authorizing a wiretap on the Quinn phone on February 10, 1986. This application was based on the affidavit of Minneapolis Police Sgt. Gordon Haertel relating the history of the investigation into the alleged operation. The affidavit details information developed through informants, visual surveillance, a "pen register" placed on the telephone line, an undercover operation, and other investigative methods. The affidavit concluded that these investigative methods would not succeed in exposing the whole operation because informants were growing fearful, undercover "buys" would require excessive amounts of money and endanger officers, and visual surveillance and the "pen register" had yielded as much information as they were capable of yielding.

The police suspected that Saliterman and Quinn shoplifted items from local retail stores, particularly Dayton's, and often with the help of store employees. They suspected that Saliterman and two co-conspirators, Edward Quinn and Fred Valentine, had committed a burglary at Cedrics in Edina on October 6, 1985. They suspected the principals were selling the stolen merchandise out of the Thomas Avenue residence, but a prior search at that address had turned up no stolen merchandise. Therefore, they suspected there was a separate storage location.

The wiretap warrant was issued on February 10, 1986, based on the probable cause shown in the application and Haertel affidavit. The warrant states there is probable cause to believe a wiretap would disclose communications regarding the offenses of theft, receiving stolen goods, burglary, and conspiracy to commit those offenses. The warrant authorizes interception of communications regarding those offenses, and more particularly,

conversations about the physical location of property after it has been stolen; conversations about the sale or transfer of stolen property to purchasers or to others for future delivery to purchasers;

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

conversations about the identity of purchasers of stolen property or persons storing or delivering stolen property; conversations about the identity and role of store employees who have in the past or may in the future assist in facilitating burglarization of their employer's store or theft of their employer's merchandise * * *.

The warrant specified certain "minimization" requirements and provided:

This warrant * * * must, in any event, terminate in ten days, or upon the charging with an offense specified above of any person specified above, whichever comes first.

Monitoring of conversations under the warrant began on February 10, 1986, at 6:00 p.m. and ended at 11:42 a.m. on February 20. Norman Mastrian, an individual specified in the warrant who had been arrested on February 18, and a companion, Terry Martin, were charged with receiving stolen property and other offenses at 12:05 p.m. on February 20.

The trial court heard the suppression motion based on a record made in federal district court on similar motions in the federal prosecutions. Sergeant Haertel testified at the suppression hearing that two important objectives of the wiretap were to identify all participants in the operation and to locate where the stolen merchandise was stored, particularly the furs stolen from Cedrics.

Haertel testified police monitored 565 phone calls, of which 231, or 41 percent were, at least in part, criminal in nature. The officers engaged in monitoring were instructed on how to "minimize," or limit, interception of non-criminal conversations. Officers were given a copy of the Privacy of Communication Act, ch. 626A, as well as a copy of the search warrant, which was posted in the intercept room.

When Mastrian and Martin were arrested on February 18, they had 15 fur coats in their possession, leaving many of the Cedrics coats still to be located. After the arrests, police monitored a number of conversations concerning transfers of the stolen merchandise. On February 18 they

executed search warrants at three locations associated with Mastrian. The following day they executed search warrants at 1012 Thomas Avenue and four other residences, finding stolen merchandise at all locations. At one address they seized items respondent Quinn had just transferred from the Thomas Avenue house. At another residence they seized a large amount of clothing and saw jewelry, burglary tools and other items for which they sought a second warrant. Three additional searches were made on February 20, but the record does not show whether they were done before or after the wiretap monitoring ended.

Respondents moved to suppress evidence obtained from the wiretap, challenging the warrant in four respects: (1) probable cause; (2) minimization provisions; (3) lack of particularity; and (4) lack of the termination provision. The district court granted the motion because the termination provision did not provide that the interception was to cease once the objective of the authorization was attained.

## ISSUE

Did the trial court clearly err in determining that the wiretap warrant was deficient, requiring the suppression of evidence derived from it?

## DISCUSSION

The Privacy of Communications Act provides that a wiretap warrant shall state that it "must terminate upon attainment of the authorized objective, or in any event in ten days." Minn.Stat. § 626A.06, subd. 4(h) (1986). The Act also provides:

Duration of warrant. No warrant entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than ten days.

The effective period of any warrant for intercepting communications shall terminate immediately when any person

named in the warrant has been charged with an offense specified in the warrant. Minn.Stat. § 626A.06, subd. 5 (1986).

The trial court found that the warrant's termination clause was deficient because although it provided for termination when a suspect was charged, this was not equivalent to the "attainment of the authorized objective." The court noted:

By using the concept of charging a defendant, as opposed to a concept directed towards achieving the desired objective, the warrant allows for the interception of communications long after a reasonably ascertained "success" was or may have been achieved.

■ The state argues the court clearly erred in suppressing the evidence. *See State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977) (recognizing state's right to appeal from pretrial order). The state contends there was substantial compliance with the statute, that such compliance is sufficient, and that the statutory termination provision in any event prohibited unlawful continuation of the wiretap. *See* Minn.Stat. § 626A.06, subd. 5 (1986). We disagree.

■ The Minnesota Supreme Court stated in *State v. Frink*, 296 Minn. 57, 74, 206 N.W.2d 664, 674 (1973):

We share the views expressed by the Federal courts that in an area as sensitive as the invasion of privacy of oral communication, there is no room to expand our statute beyond what Congress and the legislature expressly authorized.

The court in *Frink* held invalid a wiretap warrant for which an assistant county attorney applied, rather than, as required by the statute, the county attorney. *See id.* at 74–75, 206 N.W.2d at 674. The state cites a number of federal cases holding that substantial compliance with the wiretap statute is sufficient. *See, e.g., United States v. Vento*, 533 F.2d 838, 860–61 (3d Cir.1976). However, Minnesota requires strict compliance.

This warrant omitted the statutorily required provision for termination "upon attainment of the authorized objective." *See*

Minn.Stat. § 626A.06, subd. 4(h) (1986). The wiretap would continue the full ten days unless one of the targets of the investigation were charged with a targeted offense. As the trial court found, however, this was not an appropriate substitute for the missing termination provision, because it "leaves the decision to terminate the intercept to the intercepting officers and the prosecuting authorities, and not to the sound and impartial discretion of the magistrate." The prosecutor has discretion when to file criminal charges and may choose to wait until long after the attainment of the authorized objective.

Even if the filing of charges were an appropriate "objective" to trigger termination of the warrant, we note the person charged here, Mastrian, was already inculpated by sufficient evidence before the wiretap began, according to the warrant application, to allow the state to bring criminal charges. Thus, the charging of Mastrian was an arbitrary event to terminate the wiretap. Martin was not named in the warrant application.

The state contends a "termination upon attainment" clause is to be read into a wiretap warrant because it is an independent requirement of the statute. *See United States v. Cafero*, 473 F.2d 489, 496 (3d Cir.1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974). The Minnesota statute not only provides that the "terminate upon attainment" language be stated in the warrant, Minn.Stat. § 626A.06, subd. 4(h), but also that no warrant shall authorize a wiretap beyond attainment of the objective, *see* Minn.Stat. § 626A.06, subd. 5. Police officers monitoring conversations under the warrant were given a copy of the state statute as well as the warrant itself.

■ On this record, we conclude the state has not shown that police complied with the statutory provision for termination, assuming its presence in the statute alone to be sufficient to limit their discretion. The state contends the police had not attained two primary objectives: identifying all participants in the operation and finding where the stolen merchandise was

stored (particularly the Cedrics furs). The nature of the operation under investigation permitted broad objectives. *See United States v. Gambale,* 610 F.Supp. 1515, 1539 (D.Mass.) (duration of surveillance was not illegal, in part because the government was investigating a broad conspiracy), *aff'd sub nom. United States v. Womochil,* 778 F.2d 1311 (8th Cir.1985). However, even the broadest view of the authorized objectives would not have supported continuing the wiretap as long as police did here, i.e., until 23 minutes before Mastrian and Martin were charged in open court.

The state does not point to any later-discovered participants whom police were on the verge of identifying. It does not claim there was a higher level of conspirators beyond those earlier identified. *Cf. United States v. Van Horn,* 579 F.Supp. 804, 816 (D.Neb.1984) (objective had not been attained, because "top level suppliers" of drugs were never uncovered). The arrest of Mastrian and Martin had alerted the suspects to the investigation. Moreover, after Mastrian's arrest, police executed eight search warrants, seizing vast amounts of stolen merchandise before terminating the wiretap. Although all the Cedrics furs had not been recovered, it appears sufficient property had been recovered to charge the targeted individuals with that and other offenses.

## DECISION

The trial court did not clearly err in suppressing evidence derived from the wiretap.

Affirmed.

MULALLY, Judge (dissenting).

I respectfully dissent from the majority opinion affirming the order of the trial court suppressing all evidence derived from the wiretap investigation.

Apparently, the trial court concluded that the language of termination as used in the warrant, in addition to omitting the statutory provision that the intercept must cease upon attainment of the objectives, left the decision to terminate the intercept solely to the discretion of the officers and prosecuting authorities.

The communications interception warrant that was issued omitted a portion of the language required by Minn.Stat. § 626A.06, subd. 4(h), specifically that language which requires termination upon the "achievement of the objectives" of the wiretap investigation.

The warrant specifically authorized interception to continue after the receipt of the first incriminating conversations as permitted by Minn.Stat. § 626A.06, subd. 4(e). It contained the commencement and minimization provisions required by subd. 4(h) and ordered termination upon the charging of a named individual or within 10 days, whichever came first. The objectives of the wiretap in the instant case were to determine the scope, nature, and extent of a conspiracy involving theft and burglary and the fencing of the stolen proceeds; to determine the identities of participants; and to discover the location of stolen property, to permit recovery of the property and successful prosecution of the conspirators. The interceptions ceased before the end of the 10-day period and immediately before the charging of one of the named parties. That party was charged timely after his arrest and the recovery of a substantial amount of stolen property.

Clearly, the trial court's suppression of evidence derived from the wiretap investigation has a critical impact on the state's case.

The trial court construed the language of the warrant as being so broad as to fall outside of the particularity requirements of the fourth amendment. In support of its position, it cites *Berger v. State of New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *United States v. Cafero,* 473 F.2d 489 (3rd Cir.1973). Its reliance on these decisions is misplaced.

*Berger* held a state wiretap statute to be unconstitutional because, among other things, it placed *no* termination date on the wiretap, but left termination entirely to the discretion of the officer. Such is not the case here.

*Cafero* interpreted 18 U.S.C.A. § 2518(5) as *requiring* automatic termination upon

attainment of the objective of the authorization irrespective of whether a statement to that effect was set forth in the warrant. Thus, the constitutional safeguard set forth in both the federal and state statutes is to be given effect even when the warrant fails to include such a provision. Omission of the statement that interception must cease when the objective is achieved does not make the warrant facially defective. *See also United States v. Carubia,* 377 F.Supp. 1099, 1107 (E.D.N.Y.1974).

Seemingly, in arriving at its decision to suppress, the trial court indulged in a certain amount of speculation as to the thought processes and motives of the prosecuting authorities in conducting the investigation as they did. There is at least an implication by the trial court that they could have or may have rigged the sequence of events relative to suspects and timing in an attempt to circumvent statutory prohibitions. The fact that the sequential aspects of the investigation may not have been consistent with those which the trial court might have employed does not in itself destroy the legitimacy of the investigation.

This was an investigation of a wide-ranging burglary, theft and fencing conspiracy involving a number of participants. The nature of the operation permitted broad objectives, all of which were not attained even within the 10–day limitation. The fact that the police used all of the time available in the hope of attaining additional evidence in support of the case should not render inadmissible all the evidence derived from the wiretap.

Under the facts of this matter, the warrant complied substantially with the wiretap statute; the warrant was sufficient; its terms were not violated; and it was error for the trial court to suppress the state's evidence derived from the wiretap investigation.

I would reverse the trial court's order of suppression.