Howard E. Goldfluss, J.
The issues raised herein result from the complex by-products of electrical surveillance. The court has before it a motion by the District Attorney of Westchester County to quash a subpoena duces tecum directed to his office to produce certain orders, affidavits, logs, reports, transcripts or summaries of recorded conversations. Simultaneously, this court must consider the three-pronged motion of the defendant for (a) an order dismissing the complaint on the ground that the defendant has been denied a speedy trial, as provided under CPL 30.30; (b) full disclosure of the materials sought to be quashed by the District Attorney of Westchester County; and (c) failing full disclosure, dismissing the information.
I. FACTS
The defendant, Louis Guerra, was arrested on October 24, 1973, pursuant to a Grand Jury warrant resulting from a "John Doe” indictment. The arrest was also made pursuant to a search warrant which allegedly produced a weapon in the defendant’s home. It was later ascertained that he was not the "John Doe” named in the indictment, and as a result thereof, he was arraigned in Bronx Criminal Court on October 25, 1973, charged with possession of a defaced weapon as a felony (Penal Law, § 265.05, subds 2, 8) and the misdemeanor of possession of marijuana (Penal Law, § 220.03) but not with the sale of narcotics, which was the subject of the original "John Doe” indictment.
A preliminary hearing was held before a Judge of this court on November 28, 1973, and the defendant was held for the action of the Grand Jury. The matter was adjourned to Part XII of the Supreme Court, Bronx County. After subsequent adjournments, it was ascertained that the Grand Jury did not indict but returned the matter to the Criminal Court as a misdemeanor information. The gun and the marijuana, subjects of the information, were uncovered as a result of the search made pursuant to the search warrant.
On February 25, 1974, the Assistant District Attorney in *84 Bronx County assigned to the matter informed the court that the defendant was entitled to certain wiretap orders. On March 26, 1974, the defendant received wiretap orders emanating from Bronx County, which were used to garner information which ultimately became the basis for the Westchester County wiretap orders. Counsel for the defendant alleges that subsequent to promises allegedly made to counsel to the defendant to supply both Bronx and Westchester wiretap materials, he received the Bronx materials but not the Westchester materials. The defendant maintains that the information derived from the Westchester wiretap is the sole probable cause for the issuance of the search warrant which permitted the search of his home. The District Attorney of Bronx County co-operated fully with the defendant in this regard and counsel concedes this, but the Westchester County District Attorney’s office refused to grant to the defendant that same degree of discovery.
After several adjournments of the matter, this court issued a subpoena duces tecum on September 9, 1974, directing that all wiretap material be made available to the defendant, including all orders, affidavits, logs, tapes, reports, transcripts or summaries of reported conversations which could possibly involve the defendant. On October 17, 1974, the return date of the subpoena duces tecum, the motion to quash was made and the defendant countermoved for the relief related heretofore.
II. THE RIGHT TO A SPEEDY TRIAL
The defendant claims that the delay in providing him with all the materials he requires, something which he insists he is entitled to, has prejudiced him in that he now has to reconstruct the events of October, 1973, more than one year after they occurred. He further contends that even if the court directs the Westchester County materials to be turned over to him, that the long delay has irreparably harmed him because of possible memory lapses of witnesses and difficulty in locating these witnesses.
After the Supreme Court of the United States in Klopfer v North Carolina (386 US 213) applied the speedy trial protections to the States, attempts were made in other jurisdictions to define this right by reference to certain time periods. In New York, the Administrative Board of the Judicial Conference promulgated a time period definition of the right to a speedy trial, but before this could be effective, the New York *85 State Legislature enacted CPL 30.30 which was expressly designed to supersede these recently enacted rules of the Administrative Board. CPL 30.30 mandates dismissal "where the people are not ready for trial within * * * (b) ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of more than three months and none of which is a felony.”
Paragraph (c) of subdivision 5 covers the situation herein wherein the Grand Jury returned the matter to the Criminal Court as a misdemeanor. "The period applicable * * * must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument.”
The language of CPL 30.30 varies significantly from the Administrative Board Rules. The latter would have a defendant released or completely discharged "if the cause has not been brought to trial” within the prescribed period so long as the defendant was not responsible for the delay. The fact that the prosecutor was free of fault was not a factor.
CPL 30.30, however, uses the language "where the people are not ready for trial within” the prescribed time limits. It would appear, therefore, that diligence, blamelessness or readiness on the part of the District Attorney constitute factors which may be considered in determining the merits of such applications.
The defendant was arrested on or about October 23, 1973. Since he was first advised of the existence of the wiretaps (on or about February 25, 1974) he sought to obtain the Westchester County materials in order to prepare for the motion to suppress. The District Attorney of Bronx County, however, has supplied him with all materials in his possession and he contends that he,» the Bronx District Attorney, has acted in good faith. Simply put, does the refusal of the Westchester County District Attorney to turn over to the defendant the materials in his possession enure to the detriment of the District Attorney in Bronx County for the purposes of this motion? Counsel concedes full co-operation to the defendant by the Bronx District Attorney in such instance where he was capable of co-operating. In People v Timothy (34 NY2d 867) the Court of Appeals affirmed a conviction where the delay from arrest to trial was 29 months, stating, "Delay alone does not automatically breach the defendant’s constitutional and *86 statutory rights. Each such case must be determined on balance, i. e., the conduct of the prosecution and that of the defendant are weighed” (citing People v Blakely, 34 NY2d 311). Here, a factor not within the control of the District Attorney of Bronx County or the defendant caused the delay, and both parties were acting in good faith. In addition, the delay of approximately eight months from the original request does not reach the level of irreparable damage or harm. Finally, by the further disposition of defendant’s motion, no further delay will be sanctioned or permitted. That portion of defendant’s motion demanding dismissal pursuant to CPL 30.30 is, therefore, denied.
III. FULL DISCLOSURE OF ELECTRONIC SURVEILLANCE RECORDS
The motion to quash by the District Attorney of Westchester County is directed to the subpoena duces tecum issued by the court in this case. CPL 610.30 grants this court authority to issue such subpoena. "A subpoena of any criminal court * * * may be served anywhere in the county of issuance or anywhere in an adjoining county” and CPL 610.10 (subd. 3) defines subpoena as including a "subpoena duces tecum.”
The materials heretofore described in the subpoena duces tecum issued by this court relate to two telephones, one listed to Peter Mengrone in Mount Vernon, Westchester County, and the other listed to the defendant in Bronx County. Conversations between the two were intercepted. The District Attorney of Westchester County, in his affidavit, strongly objects to the discovery of these items because he alleges it is material which touches upon prosecution pending in the United States District Court, Southern District, as well as this action in Bronx County. He details in his affidavit that this is part of a large investigation of approximately one year in duration by Federal and State law enforcement personnel concerning large scale criminal conspiracies involving narcotics, extending in their impact from New York State to Florida. Moreover, he alleges the logs of the wiretap of Peter Mengrone includes investigative leads which, to this date, have not been fully explored. It is his concern that if the material is made available to this defendant the security of this mammoth investigation will be breached in that defendant will be in a position to warn other individuals with whom he is allegedly connected. He further submits that these individuals are potential subjects of a police investigation concerning *87 serious criminal charges. In addition thereto, several other individuals concerned in the wiretap are currently codefendants in a Federal indictment now pending and it is the concern of the Westchester prosecutor that premature disclosure of the materials could frustrate the prosecution and destroy leads to other potential defendants. The District Attorney insists that disclosure should not be made where public rights might be endangered.
The defendant, on the other hand, is equally insistent that an inspection of the tapes, logs and transcripts of the wiretaps is a necessary condition precedent for his preparation to contravert the search warrant which was based on the Westchester County wiretap order. He urges that a real issue of identity is presented, primarily because originally the defendant was the possible subject of the "John Doe” indictment and subsequently it was discovered that he was "not the man” that sold the undercover agent narcotics. He reasons that such confusion could possibly extend to his identity in connection with the current charge, and that if such confusion did exist, the issue of probable cause would be materially affected. In addition, he alleges that there is no possible way that he can determine if the minimization requirements under CPL 700.30 (subd. 7) have been complied with, unless he is permitted the full discovery and inspection he requests.
At oral argument prior to submission of memoranda in this case, the issue of in camera inspection by the court v/as raised. This procedure, of course, could be the panacea which could resolve the vexatious problem submitted herein. Unfortunately, in the opinion of this court, such a procedure would sidestep the issue and not confront it. There are instances where in camera inspection would be appropriate. Dennis v United States (384 US 855) accepted disclosure of Grand Jury minutes subject to in camera deletion of extraneous materials, and there have been other appropriate examples. But electronic surveillance is a unique situation and the Supreme Court of the United States, in Alderman v United States (394 US 165) recognized it as such. In Alderman, the Government conceded that it had to disclose any surveillance records. However, the Government further contended that it need not be put to a "disclose-or-dismiss option” (p 181) because none of the information obtained by surveillance was arguably relevant to the conviction. The Government further urged that electronic surveillance records be submitted to the Trial Judge *88 for in camera examination, and that after such inspection, the court could then turn over to the defendant any record found to be "arguably relevant” to a possible violation of the defendant’s Fourth Amendment rights.
In deciding that this procedure would not be appropriate, the court stated (p 182): "Admittedly, there may be much learned from an electronic surveillance which ultimately contributes nothing to probative evidence. But winnowing this material from those items which might have made a substantial contribution to the case against a petitioner is a task which should not be entrusted wholly to the court in the first instance. It might be otherwise if the trial judge had only to place the transcript or other record of the surveillance alongside the record evidence and compare the two for textual or substantive similarities. Even that assignment would be difficult enough for the trial judge to perform unaided. But a good deal more is involved. An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of the caller or the individual on the other end of a telephone or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of the accused’s life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidedly, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government’s case.”
The court thereby reaffirms a basic concept, i. e., that an adversary hearing is the cornerstone of our system of criminal justice. The need for adversary inquiry is even more apparent when the issues become complex to a degree where ex parte proceedings will not serve the needs of justice.
IV. MINIMIZATION
Such complexity manifests itself most markedly when considering the subject of minimization. CPL 700.30 contains the legislative safeguard designed to limit as much as is possible unnecessary invasions of privacy.
Subdivision 7 states that an eavesdropping warrant must contain "a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such *89 a way as to minimize the interception of communications not otherwise subject to eavesdropping under this article, and must terminate upon attainment of the authorized objective, or in any event in thirty days”.
This provision creates a special problem, namely, what portion of the total conversation must comply with the minimization to be monitored in order to comply with the minimization requirement? Clearly, no exact formula can be set down. In People v Castania (73 Misc 2d 166) the court held that failure to monitor 48% of the total footage of telephone conversations in a wiretap conversation did not comply. In People v Kennedy (75 Misc 2d 10) the court, in dicta, concluded that pursuant to a wiretap order, only 10% of the conversations were live-monitored and all others were recorded. The court held that, in effect, no minimization had taken place. In light of these findings, it is obvious that no determination of compliance with minimization requirements can be made without full disclosure.
The District Attorney of Westchester County submits that the method used by the defendant herein was incorrect — that he should have moved for disclosure instead of proceeding by subpoena duces tecum. He further submits that such motion should be made before the Judge of the County Court of Westchester County, who issued the eavesdropping warrant and who can grant such motion or not grant it, in the interests of justice. The fault with this argument lies in the fact that the defendant is moving to suppress evidence received which resulted from a search warrant. He claims this warrant is based on illegally obtained information. That being the case, an adversary hearing must be held in order to determine probable cause for the issuance of the warrant. The defendant is charged in Bronx County; he is being tried in Bronx County; and he is moving to suppress in Bronx County; and before this adversary hearing takes place, the defendant is entitled to have full disclosure, not by the grace of a court, but as a matter of right. This is true, notwithstanding the source of the original information, or the place or county of its origin. Once determining that the defendant has standing, these records are essentially for his inspection (United States v Hoffa, 436 F2d 1243; Kolod v United States, 390 US 136), especially since he has the burden of establishing that the evidence offered against him was tainted by the tap (United States v Weinberg, 108 F Supp 567). The issues of materiality, *90 staleness, minimization and audibility are all contributing factors in this case to the issue of probable cause. To deny the defendant the right to information relating to these elements, would indeed be a denial of due process.
The Westchester County District Attorney alleges that if the discovery is ordered, security in an important far-reaching criminal investigation will be breached. He adds in his memorandum, "It is not in the interests of justice to jeopardize the integrity of several prosecutions upon indictments for serious felony crimes in order to grant liberal discovery in a prosecution upon an information concerning misdemeanor charges against one party.” With these words he has caused the issue to be drawn. If the People are compelled to exercise the "disclose or dismiss” option, as referred to in Alderman v United States (supra), will the interests of justice be frustrated, or should we, in the name of law enforcement, quietly abridge the rights of one individual? The answer is obvious. Abridge the rights of one and the door has been opened to abridgement on a larger scale. Such a compromise cannot benefit our society, and in truth, could lead to a change in our structure, which would render meaningless the constitutional provisions which protect the individual. The so-called "Warren Court” was faced with this issue repeatedly. Elsie Mapp was the personification of evil, but no "shortcut to conviction” was permitted, even though keeping her out of circulation would have undoubtedly been beneficial to citizens of Cleveland, Ohio (Mapp v Ohio, 367 US 643). Ernesto Miranda was charged with a particularly shocking crime, but his conviction, otherwise legally sufficient, was fatally defective because of denial of Fifth Amendment protections. (Miranda v Arizona, 384 US 436.)
If a small percentage of the allegations made against the defendant Guerra in the papers submitted by the People are to be believed, he, too, would fall into the category of being one of society’s offenders who, as the Lord High Executioner in the Mikado decreed, "never would be missed.” It is a physical fact that the gun was found in Guerra’s apartment, but it is still the obligation of this court to determine if the search is a valid one based upon a valid search warrant, because a search is good or bad when it starts. A bad search, in violation of the Fourth Amendment, is not made good by what it discloses. (See Byars v United States, 273 US 28, 29; Henry v United States, 361 US 98, 104; United States v Di Re, 332 US 581, 585 and 595.)
*91 The People urge, in effect, that the granting of this high degree of protection, traversing two counties, to this particular defendant, is not worth the effort. Perhaps he is not worth it, but our system of justice is. Electronic surveillance may be a necessary tool for the Government to use in order to protect itself from its transgressors but the Government has recognized that this practice is distasteful and the courts and the Legislatures have, for this reason, imposed tight restrictions on its use. (See Alderman v United States, supra; Berger v New York, 388 US 41; United States v Hoffa, supra; US Code, tit 18, §§ 2512, 2513, 2516, subd [2]; §§ 2518, 2520.) There is good reason for these restrictions. Visions of unrestrained monitoring of citizens’ conversations conjure up a dark future for a nation born because of its yearning for personal liberty. This liberty depends upon the right of a solitary individual to examine and inspect the method his Government uses to incriminate and convict him.
"Wherever an individual may harbor a reasonable 'expectation of privacy,’ * * * he is entitled to be free from unreasonable governmental intrusion.” (See Terry v Ohio, 392 US 1, 9; Katz v United States, 389 US 347.)
It is the opinion of this court that if a defendant suspects that such unreasonable or illegal intrusion exists, then the Government should be in the forefront to permit minute scrutiny of information which could dispel such suspicion. No system of law enforcement could justify its own credibility by doing less.
The motion to dismiss for denial of speedy trial is denied.
Motion to quash material subpoenaed, as directed in the original subpoena duces tecum, is denied.
Motion to dismiss the information is granted, unless such materials are furnished to the defendant within 30 days from the filing of this decision.